[L. A. No. 4096. In Bank.—October 5, 1915.]

F. T. HARRIS, Appellant, v. LEWIS E. COOLEY, Superintendent of Schools of the County of Imperial, Respondent.

SCHOOLS—COMPETITIVE PLANS AND SPECIFICATIONS—ACT OF 1872 SUPERSEDED.—The act entitled "An act to regulate the erection of public buildings and structures" (Stats. 1871–72, p. 925), in so far as it originally applied to the construction of school buildings, has been superseded by the subsequent enactment of various sections of the Political Code applying to the erection of school buildings, and the provisions of the act calling for competitive plans and specifications are no longer in force.

ID.—PRIOR STATUTE SUPERSEDED BY LATER ON SAME SUBJECT—REPEAL BY IMPLICATION.—While it is true that repeals by implication are not favored, whenever it becomes apparent that a later statute is revisory of the matter of an earlier statute and is designed as a substitute for it, the later statute will prevail and the earlier will be held to have been superseded even though there be found no inconsistencies or repugnancies between the two. It is not so much a repeal by implication as it is that the legislature having made a new and complete expression of its will upon the subject this last expression must prevail, and whatever is excluded therefrom must be ignored.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

Conkling & Brown, and Seward A. Simons, *Amicus Curiae,* for Appellant.

Phil D. Swing, District Attorney, and J. S. Larew, for Respondent.

LORIGAN, J.—The plaintiff appeals from a judgment of nonsuit entered in a proceeding brought by him for a peremptory writ of mandate against defendant as superintendent of schools of Imperial County to require him in his official capacity as such superintendent to approve a warrant issued to the plaintiff by the board of trustees of the Central Union High School District of Imperial County. The warrant was for

$1997.35, being a balance alleged to be due the plaintiff from said high school district upon a contract made in 1912, whereby the said school district agreed to pay plaintiff the sum of five per cent upon the cost of erection of a school building in the district for his services as architect in drawing the plans and specifications therefor and superintending the construction of the building.

There was no substantial conflict in the evidence in the case. The refusal of respondent to approve the warrant was based on the ground, which was a fact conceded on the trial, that the board of school trustees of the district in entering into the contract with plaintiff had failed to comply with the provisions of an act of the legislature entitled, "An act to regulate the erection of public buildings and structures." (Stats. 1871–72, p. 925.)

There is no designation in this act of particular public buildings to the erection of which its provisions should apply. It does not refer particularly to school buildings. It is broad in its terms and contemplates all public buildings of every character and its provisions apply to all. We shall quote the first section in full and for the sake of brevity epitomize the others.

Section 1 provides: "When by any statute of this state power is given to any state or county officer or officers or to any board of supervisors or corporation, or any board of trustees or commissioners, or other person or persons created or appointed by authority of any such statute, to erect, or cause to be erected or constructed, any state or county or other building or structure, it shall be the duty of said officer or officers, board of supervisors, corporation, or board of trustees, or commissioners, or other person or persons to advertise for plans and specifications in detail for said building or other structure, and to state in said advertisement the amount authorized by law or otherwise to be expended for the erection of said building or structure; and also the premium to be awarded to the architect whose plans and specifications for the same may be adopted."

"2. Whenever the plans and specifications of any architect shall be adopted, such officer . . . , or board of trustees . . . adopting the same, shall, before any premium shall be awarded for such plans and specifications, require such architect to execute and file with such officer . . . a good and sufficient

bond, with two sufficient sureties thereto, in the penal sum of
five thousand dollars, to be approved by such officer . .. . or
board of trustees . . . as the case may be, and conditioned
that within sixty days from the date of said bond he will, on
presentment to him, enter into a contract containing such pro-
visions and conditions as may be required by such officer . . . ,
or board of trustees . . . ; and also conditioned that he will
give such further bond to secure the faithful performance of
such contract with such sureties as may be required of him,
in the event that such officer . . . , or board of trustees . . . ,
so acting under authority of law should, within sixty days,
require said architect to enter into such contract to erect such
building or structure, at the price named in said advertise-
ment to be expended for such purpose. In case said architect
whose plans and specifications are adopted should enter into
such contract, it shall be the duty of such officer . . . to em-
ploy a competent architect or superintendent, to superintend
the erection of such building or structure, and to see that such
plans and specifications are faithfully carried out.

"3. All contracts entered into by such officer . . . , board of
trustees, . . . in violation of the provisions of this act, shall
be null and void."

The trial court in granting the nonsuit did so on the theory
that this act of 1871–72 was still in effect as far as the building
of school buildings is concerned and that noncompliance there-
with by the board of school trustees through failure to adver-
tise for plans and specifications for the school building to be
erected by them rendered their contract with plaintiff void.

It is to be observed that this act of 1871–72 provides for com-
petitive bidding for plans and specifications for the erection
of all public buildings which would include therein four prin-
cipal classes—state, county, municipal, and school buildings.
The contention of the appellant is that this act as to all of the
classes of buildings with which it originally dealt has been
superseded by subsequent new and direct legislation enacted
at various times until the act has become nugatory for any
purpose; that as to the construction of state buildings it no
longer obtains, having been superseded by the act of March
23, 1876, (Stats. 1875–76, p. 427), providing for a building
scheme for the erection of all state buildings and respecting
contracts therefor; that as to the erection of county buildings
full powers are committed to the proper officers of the several

counties which are inconsistent with the application of this
act (County Government Act 1897, [Stats. 1897, p. 452]; Pol.
Code, secs. 4041 et seq.); that under the powers conferred on
municipalities by their charters and by the Municipal Corpo-
ration Act of the state (Stats. 1883, p. 93) the matter of con-
structing public buildings is committed to the control of the
governing bodies of such municipalities (Municipal Corpora-
tion Act, Stats. 1901, p. 27); and that by the enactment of
various sections of the Political Code applying to the erection
of school buildings the provisions of the act of 1871-72 have
been superseded as to such buildings. While there may be
much force in the contention of appellant of the implied re-
peal of the act as affecting the erection of public buildings
other than school buildings by the subsequent legislation par-
ticularly referred to, we are only presently concerned with
whether the act as originally enacted applying to the construc-
tion of school buildings has been rendered ineffective by the
subsequent legislation relied on by appellant. The contention
of appellant is that it has, and applying the rule laid down
in *Mack* v. *Jastro,* 126 Cal. 130, [58 Pac. 372], we are satis-
fied that this contention must be sustained. In that case it is
said: "While it is true that repeals by implication are not
favored, whenever it becomes apparent that a later statute is
revisory of the matter of an earlier statute and is designed as
a substitute for it, the later statute will prevail and the earlier
statute will be held to have been superseded even though there
be found no inconsistencies or repugnancies between the two.
. . . It is not so much a repeal by implication as it is that the
legislature having made a new and complete expression of its
will upon the subject this last expression must prevail and
whatever is excluded therefrom must be ignored."

It is provided by section 1617 of the Political Code with
respect to the powers and duties of trustees of common school
districts made applicable by section 1674, subdivision 10 there-
of, to boards of trustees of union high school districts, that
such school boards shall have power: "Fifth. When directed
by a vote of their districts to build schoolhouses . . . " and
by subdivision 22 of section 1617 alike applicable to both
boards that "Before making any contract for the expen-
diture of more than two hundred dollars to publish a notice
calling for bids, stating the work to be done or materials or
supplies to be furnished, and the time when and place where

bids shall be opened, (specifying the notice to be given), and to let such contract to the lowest responsible bidder.'' By section 1543 of the same code it is provided that ''It is the duty of the superintendent of schools of each county. . . . Eleventh. Except in incorporated cities having boards of education, to pass upon and approve or reject all plans of schoolhouses. To enable them to do ,so, all boards of trustees before adopting any plans of school buildings must submit the same to the county superintendent for his approval.''

All this code legislation was long subsequent to the act of 1871–72.

It must, of course, be conceded that the express power conferred on boards of school trustees to erect school buildings implies as a necessary incident to that power the right to procure plans and specifications. The only question is does the act of 1871–72, calling for competitive bids on the subject, apply notwithstanding the subsequent legislation disclosed in the sections of the Political Code just referred to.

An examination of the provisions of the act of 1871–72 shows, as we have stated, a complete scheme for the erection of all public buildings. It had not to do simply with procuring from an architect by competitive bids plans for the erection of a proposed building within the amount authorized by law to be expended therefor to be stated in the notice calling for the submission of plans and specifications, but its principal purpose was to secure the actual erection of the building by an architect submitting plans and specifications adopted by the board at an amount previously estimated and specified in the advertisement therefor. This is apparent from the requirement of the act that the architect when his plan is adopted by the board shall execute a bond in a sufficient amount, conditioned that within sixty days from the date of the bond and presentment to him he would enter into a contract to erect the building according to his plans and specifications at the price already fixed in the advertisement to be expended therefor. The main purpose was to require the successful architect to become the contractor. There is nothing in the act requiring any competitive bids as to the amount for which the contemplated building might be erected. That amount was already determined. The only competition was as to plans and specifications for the purpose of enabling the board to determine from the various plans submitted which

was the best and most satisfactory building which could be built for the money authorized to be expended. These provisions of the act contemplating this sole purpose could, of course, have no application under the enactments of the code respecting the building of schoolhouses, because these code provisions now cast upon school boards the mandatory duty of letting contracts to the lowest bidders for the construction thereof, and to that extent it cannot be questioned but that the code enactments have had the effect of superseding these provisions of the act. But it is said by respondent if it be conceded that these particular provisions of the act as to letting the contract for construction to the architect whose plans and specifications are adopted can no longer apply, still that section 1 of the act may still stand as controlling the action of school trustees respecting plans for school buildings; that while the other sections of the act may have been repealed or superseded by the code enactments providing for competitive bidding in the erection of school buildings, nevertheless the requirements of said section 1 may be severed from them and stand unaffected. Under this contention it is claimed that by the provisions of section 1 of the act boards of school trustees are still required, notwithstanding the contract for the building of schoolhouses must be let to the lowest bidder, to advertise for competitive plans therefor. But we do not think that section 1 of the act can be treated as severable from its other provisions. Nor did the legislature contemplate that it should be. The act was intended to provide a complete scheme for the erection of all public buildings. It was not contemplated that these plans should be obtained for any other reason or purpose than to make the successfully competing architect become the contractor for the erection of the building. The securing of plans was solely for that purpose. But this can no longer be accomplished under the act so far as school buildings are concerned. The code provisions requiring the school trustees to call for bids for constructing school buildings and to let the contract to the lowest bidder are inconsistent with the provisions of the act and this, in addition to vesting the whole power of approving or rejecting plans for school buildings in the hands of the county superintendent, provides a new and complete scheme under which such buildings are to be erected, which is inconsistent with the provisions and pur-

pose of the act of 1871–72 and must be deemed to have been intended by the legislature to supersede it.

The judgment appealed from is reversed.

Melvin, J., Sloss, J., Lawlor, J., Shaw, J., and Angellotti, C. J., concurred.