CURTIS, J.
 

 These two appeals are taken from the same judgment. The judgment rendered was in favor of the plaintiff and against the defendant West American Finance Company, and is for the sum of $38,909.91, besides costs and interest. Said defendant has appealed from said judgment on the ground hereinafter more fully referred to and discussed, and claims that the same is erroneous in its entirety. The plaintiff has appealed from said judgment and claims that it is inadequate and should include the sum of $6,693.98, in addition to the sum of $38,909.91, the amount found due plaintiff by the trial court.
 

 Plaintiff was the owner of two adjoining lots in the city of San Francisco, situated on Jackson Street, near Buchanan. He planned to erect thereon a class A apartment house and applied to the defendant for a loan to finance the erection of said building. His application for a loan of $150,000 was approved, the proceeds to be used in the erection of said building. Accordingly a promissory note in that amount payable one year after date with interest at seven per cent per annum payable monthly in advance was executed and
 
 *165
 
 delivered by plaintiff to defendant. At the same time and as a part of the same transaction, the plaintiff executed and delivered a trust deed to secure the payment, of said promissory note. C. A. Gibson and B. T. Harper were named as trustees in said trust deed and the defendant was named as the beneficiary. This trust deed covered the two Jackson Street lots owned by the plaintiff.
 

 Upon the execution and delivery of his note and trust deed, and the recordation of the latter instrument, the plaintiff began the construction of said apartment house upon said lots. The process of construction continued for a period of one year and at the end of the year the building was uncompleted. The defendant had advanced for the use of plaintiff on said promissory note from time to time during said year the sum of $134,396.11, which had been used in payment of the cost of constructing said building. This item according to the findings of the court was made up as follows: $122,804.03, advanced by defendant to plaintiff, or on his orders, during said year; $11,473.99, advanced by defendant to R. L. Flint during said year for the purpose of paying construction costs, and which was actually used for that purpose, and the item of $120.09, insurance on said building. According to the terms of this promissory note it matured at the end of one year. The plaintiff was then unable to pay said note or the amounts advanced thereon. Proceedings were instituted to foreclose said trust deed and these proceedings resulted in a sale of the real property covered by the trust deed to the Pacific States Savings & Loan Company acting for the defendant for the sum of $150,000. Although this property was bid in by the Pacific States Savings & Loan Company, it is conceded that the property was bought for defendant. Immediately after the sale, the Pacific States Savings
 
 &
 
 Loan Company conveyed the property to the defendant. Thereafter and within one year from the date of said sale the plaintiff commenced this action. His complaint was subsequently superseded by his third amended complaint. The third amended complaint consisted of four causes of action. The first cause of action was for damages alleged to have been sustained by the plaintiff by the wrongful act of this defendant and others in failing to deed to plaintiff said property under a refinancing plan after it had been bid in at said foreclosure sale as it was alleged the defendant had agreed to do. The second cause of action was for the recovery of
 
 *166
 
 treble the amount of usurious interest alleged to have been paid by plaintiff to defendant. The third and fourth causes of action, we are not concerned with in the decision of either of these appeals. We do not consider it necessary to set forth in detail the facts alleged in the first and second causes of action as it would aid but little in the decision of any question before us. A mere detailed statement of the allegations of these four causes of action may be found in the decision of the District Court of Appeal in the case entitled
 
 Penziner
 
 v.
 
 West Americam Finance Co.,
 
 133 Cal. App.
 
 578
 
 [24 Pac. (2d) 501.]
 

 To this complaint both general and special demurrers were interposed by the West American Finance Company and other defendants. These demurrers were sustained, but on appeal the judgment of the trial court in favor of the defendant after sustaining said demurrers was reversed as to plaintiff’s first two causes of action.
 
 (Penziner
 
 v.
 
 West American Finance Co., supra.)
 

 Upon the ease being returned to the superior court for trial upon the first two causes of action of said third amended complaint, the defendant filed its answer thereto. The cause went to trial, and resulted in a judgment in favor of the defendant on the first cause of action and in favor of the plaintiff upon the second cause of action. No appeal has been taken from the judgment on the first cause of action in favor of defendant. The controversy therein involved is, therefore, not before us in any manner. As before stated, the plaintiff has appealed from that portion of said judgment deducting from the amount of treble interest said sum of $6,693.98, and the defendant has appealed from said judgment in its entirety. We will continue to refer to the parties as the plaintiff and the defendant, the latter term applying only to the West American Finance Company.
 

 The evidence shows that the transaction between the parties hereto was carried on in the following manner. Plaintiff was given credit upon the books of the defendant for the amount of the loan, $150,000. He was paid no part of this sum in cash, but as payments became due on the building, the defendant would pay the contractors or advance to plaintiff funds sufficient to meet the payments, and charge plaintiff’s account with the amount so advanced or paid. Plaintiff was also charged in advance monthly interest on the entire loan. For instance, the note was dated August 16, 1927. On
 
 *167
 
 that date the plaintiff’s account was charged with the sum of $875, being one month’s interest at 7 per cent per annum on the entire amount of $150,000. During that month the account of plaintiff as kept by defendant showed that defendant paid out for the use of plaintiff approximately the sum of $7,500. On the 16th of September, defendant charged the plaintiff’s account with a full month’s interest on the entire loan although the entries in its books showed that it had only paid out for plaintiff at that time the sum of approximately $7,500. On the following months for the balance of the entire year, the same procedure was followed. The regular charge of $875, being one month’s interest on the entire loan, was made against plaintiff’s account each month regardless of the amount which the defendant from time to time had advanced for plaintiff during said periods. Plaintiff was also charged with the sum of $4,500, as brokerage paid for making the loan, which the trial court found was not in fact paid. In this manner the plaintiff’s account was charged during the year with $10,500 interest, which together with the $4,500 brokerage payment amount to a profit of $15,000, and greatly exceeded 12 per cent per annum. This amount the court found “is a greater sum and value than the rate of 12 per cent upon $100.00 for one year”. The interest on the several amounts of money from the time they were advanced respectively to the end of the year at 12 per cent per annum is the sum of $7,434.48. Upon the sale of the property under the deed of trust, the proceeds were applied, after the payment of the costs of sale and said sum of $134,396.11, to the payment of said brokerage charge of $4,500 and interest on the entire loan from the date to the maturity of said promissory note.
 

 It is first contended by defendant that plaintiff never paid one cent of interest to it and that the sale under the. trust deed did not constitute payment of interest. The facts are undisputed that the only interest paid by plaintiff was paid through the sale of the encumbered property under the deed of trust and the application of the proceeds of said sale by the trustees to the payment of the amounts advanced by the defendant with interest thereon as charged in the manner hereinbefore shown and said sum of $4,500 brokerage charge. This contention presents a serious question of law w'hich might be difficult of solution if the same were properly before us. We are of the opinion, however, that the question
 
 *168
 
 as to whether the sale under the trust deed constituted payment of interest was decided in the former appeal in this action against the contention of the defendant.
 

 As noted above the order of the trial court sustaining defendant’s demurrer to the second cause of action of the third amended complaint, being the cause of action in which the judgment appealed from was rendered, was reversed by the District Court of Appeal.
 
 (Penziner
 
 v.
 
 West American Finance Co., supra.)
 
 As we have seen in this second cause of action, plaintiff predicates his right to recover treble interest upon the theory that the sale under the trust deed constituted payment of interest. In holding that the second cause of action stated a good cause of action, the court not only implied but expressly held that the sale of plaintiff’s property under the trust deed and the application of the proceeds of said sale to the payment of the interest claimed to be due and owing from plaintiff to defendant constituted payment of such interest within-the terms of the usury law then in force. A reading of the opinion in that case compels such a conclusion. The only argument advanced by the defendant against the application of the doctrine of the law of the case to the situation existing in the present action is that in the former appeal the court had before it only the allegations of the complaint; that the deed of trust was not before the court on the former appeal but is part of the record on appeal now before us, and that this deed of trust contains a covenant that the plaintiff is entitled to any surplus over and above his obligation. Defendant does not indicate the materiality of its new evidence, but appears to contend that the facts now before the court are different from those before the court on the former appeal, and therefore the rule of the law of the case does not apply. It cites in support of its present contention the case of
 
 Otten
 
 v.
 
 Spreckels,
 
 183 Cal. 252 [191 Pac. 11]. That case simply holds that the rule has no application where the facts in the second appeal are different from those shown io have been present on the first appeal. There is no question but that the decision correctly states the law, but it will appear from a most casual reading of the opinion in that case that there was a radical difference between the facts before the court on the two appeals. That is not the case in the present appeal. We fail to see just what bearing the provision of the trust deed containing a covenant that the trustor shall be entitled to any surplus over and
 
 *169
 
 above his obligation, liad in determining the question as to whether the sale under the trust deed constituted payment of interest. Such a provision is usually contained in instruments of that character, and even in the absence of such a covenant, the rule would be the same, and upon a sale of the trust property, after the payment of all claims of the beneficiary and the trustees, the surplus remaining would belong to the trustor. (25 Cal. Jur., p. 108;
 
 Atkinson
 
 v.
 
 Foote,
 
 44 Cal. App. 149, 156 [186 Pac. 831].)
 

 It is clearly established by the decisions in this state that when the precise question before the court has been decided in a former appeal in the same action and under substantially the same state of facts, the parties are estopped from again litigating this question in any subsequent proceeding either before the trial or appellate courts.
 
 (United Dredging Co.
 
 v.
 
 Industrial Acc. Com.,
 
 208 Cal. 705, 712 [284 Pac. 922], and scores of cases decided by this court and listed in 2 Cal. Jur., pp. 946, 947 and 948.) On the former appeal in this action the question as to whether the sale under the trust deed and application of the proceeds thereof constituted payment of interest, was squarely before the court, and it was unequivocally held that such sale constituted a payment of interest on the original obligation of the plaintiff. That the court so held plainly appears from the following excerpts from the opinion. On page 588 of the opinion, we find this statement: “Through the sale and conveyance to the loan company [the Pacific States Savings & Loan Company] for the finance company [the defendant herein], the plaintiff paid to the latter and the latter [the defendant] extorted from him for the loan, the sum of $19,362.50, which exceeds twelve per cent per annum on $100,000, the amount actually advanced.” Again on the same page of the opinion, the court says: ‘ ‘ The interest was paid to and received by the finance company [defendant] alone, by the application of the amount of the bid made by the loan company at the sale to the claimed debt due the finance company by the trustees.” The law of the case applies regardless of whether the former decision is correct or erroneous.
 
 (Westerfeld
 
 v.
 
 New York Life Ins. Co.,
 
 157 Cal. 339, 342 [107 Pac. 699],
 
 Tally
 
 v.
 
 Canahl,
 
 151 Cal. 418, 421 [90 Pac. 1049],
 
 Newport
 
 v.
 
 Hatton,
 
 207 Cal. 515, 519 [279 Pac. 134], and
 
 McEwen
 
 v.
 
 New York Life Ins. Co.,
 
 187 Cal. 144, 147 [201 Pac. 577].) In these deei
 
 *170
 
 sions the doctrine of the law of the case is stated as follows: “Where upon an appeal, the Supreme Court, in deciding the appeal, states in its opinion a principle or rule necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . and this, although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular.”
 
 (Westerfeld
 
 v.
 
 New York Life Ins. Co., supra,
 
 p. 342.) However, in holding that the law of the case applies in the present appeal before us, we are not to be understood as passing upon the accuracy of the former decision. For our present purpose, the former decision in this action establishes the law which must govern this court in determining the question as to whether any interest was really paid by the plaintiff. The former opinion held that interest was paid by the sale under the trust deed and the application of the proceeds of the sale in the manner shown above. That decision established the law which must govern this court in the decision of the question there decided.
 

 It is next contended that the usury law of 1918 (Statutes of 1919, p. Ixxxiii), an initiative measure, was repealed by the adoption in November, 1934, of section 22 of article XX of the Constitution. The judgment in this case was rendered June 17, 1935. There can be no doubt that if the constitutional provision did in fact repeal the usury law of 1918 without a saving clause, plaintiff’s cause of action fell with such repeal. The right to recover treble damages given by section 3 of the usury law is a purely statutory remedy, not existing at common law, and is likewise a penalty imposed upon the lender. The rule in such cases is clear that where no rights are vested the right falls and the statutory remedy ceases to exist upon the repeal of the statute without a saving clause unless the right has been converted into a final judgment prior to a repeal of the statute. Although the cause of action upon which the judgment herein is based, accrued prior to the date of the alleged repeal, the judgment was entered subsequent to that date. The repeal of the statute without a saving clause would therefore wipe out the cause of action and render the judgment of no legal validity.
 
 (Anderson
 
 v.
 
 Byrnes,
 
 122 Cal. 272 [54 Pac. 821];
 
 Napa. State Hospital
 
 v.
 
 Flaherty,
 
 134 Cal. 315 [66 Pac. 322];
 
 People
 
 v.
 
 Bank of San Luis Obispo,
 
 159 Cal. 65 [112 Pac.
 
 *171
 
 866, Ann. Cas. 1912B, 1148, 37 L. R. A. (N. S.) 934];
 
 Moss
 
 v.
 
 Smith,
 
 171 Cal. 777 [155 Pac. 90];
 
 Callet
 
 v.
 
 Alioto,
 
 210 Cal. 65 [290 Pac. 438];
 
 Krause
 
 v.
 
 Rarity,
 
 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327];
 
 Ewell
 
 v.
 
 Daggs,
 
 108 U. S. 143 [2 Sup. Ct. 408, 27 L. Ed. 682].)
 

 We are thus directly presented with the question as to the legal effect upon the usury law of the adoption by the people of section 22 of article XX of the Constitution. It should be here mentioned that the usury law was adopted as an initiative measure and inasmuch as it contains no provision permitting its amendment by the legislature, the act can be amended or repealed only “by a vote of the electors”. (California Constitution, art. IV, see. 1.)
 

 On the question as to the legal effect of the constitutional provision, not only have exhaustive briefs been filed by the parties, but numerous
 
 amici curiae
 
 have filed briefs covering a wide range of discussion.
 

 The usury law consists of five sections. Section 1 provides that the rate of interest upon the loan or forbearance of money, or upon California judgments shall be 7 per cent per annum, but it shall be competent for the parties to contract for a rate of interest not to exceed 12 per cent per annum, if such contract is in writing.
 

 Section 2 provides that no person, company, association, or corporation shall directly or indirectly take or receive, in money, goods or things in action, or in any manner whatsoever any greater sum for the loan or forbearance than at the rate of 12 per cent per annum; that in the computation of interest, interest shall not be compounded, nor shall interest bear interest unless so agreed in writing. It is further provided that any agreement or contract of any nature in conflict with the provisions of this section shall be null and void”, as to its interest provisions and no action to recover interest on such agreement shall be maintained, and the maturity date of the debt cannot be accelerated.
 

 Section 3 provides that every person, company, association or corporation that has paid interest in excess of that allowed under sections 1 and 2 may recover against the person, company, association, or corporation who shall have taken or received the same, treble the amount of the money so paid in violation of said sections, providing that such action must be brought within one year after such payment. The section further provides for certain penalties to be imposed on cer
 
 *172
 
 tain classes of lenders which provisions have been held to be unconstitutional.
 
 (Wallace
 
 v.
 
 Zinman,
 
 200 Cal. 585 [254 Pac. 946, 62 A. L. R. 1341]) and then provides any violation of sections 1 and 2 shall be a misdemeanor.
 

 Section 4 repeals sections 1917, 1918, 1919 and 1920 of the Civil Code and all acts and parts of acts inconsistent with the usury law.
 

 Section 5 provides that the act may be designated as the “usury law”.
 

 Article XX, section 22, of the Constitution is not divided into numbered sections. Paragraph 1 provides that the rate of interest upon the loan or .forbearance of money, or upon California judgments shall be 7 per cent per annum, but it shall be competent for the parties to any loan agreement to contract in writing for a rate of interest not exceeding 10 per cent per annum. It is to be noted that except for the permissible contract rate being reduced from 12 per cent to 10 per cent this paragraph is substantially similar to section 1 of the usury law.
 

 Paragraph 2 of the amendment provides that no person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 per cent per annum upon any loan or forbearance of any money. Except as to the reduction of interest from 12 per cent to 10 per cent per annum this paragraph is substantially Similar to the first part of section 2 of the usury law. The many other provisions of section 2 of the usury law find no counterpart in the constitutional amendment.
 

 Paragraph 3 of the constitutional amendment finds no counterpart in the.usury law. It provides, “However, none of the above restrictions shall apply” to building and loan associations, industrial loan companies, credit unions, licensed pawnbrokers or personal .property brokers, or to banks incorporated under the state “Bank Act” of 1909 or under federal law, or to any nonprofit cooperative association organized under the Agricultural Code and certain other designated classes of lenders of which appellant is not a member, “nor shall any such charge or any said exempted classes of persons be considered in any action or for any purpose as increasing or affecting or as connected with the rate of interest hereinbefore fixed”. It is further provided that “the Legislature may from time to time prescribe the maximum rate
 
 *173
 
 per ¡minim of, or provide for the .supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonus, commissions, discounts or other compensation whibh all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action”.
 

 Paragraph 4 of the constitutional amendment provides that, “The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith. ’ ’
 

 In reading the amendment it is at once apparent that the first two paragraphs, except as to reducing the maximum rate of interest, are wholly consistent with the usury law. Further, the amendment is wholly silent as to remedies or penalties and does not contain many of the other provisions of the usury law. The amendment does, however, place in the hands of the legislature the power to control certain of the charges of certain designated classes of lenders. Aside from reducing the maximum permissible rate from 12 per cent to 10 per cent there is nothing in the constitutional provision to indicate that it was intended thereby to affect the applicability of the usury law provisions at least in so far as they apply to the nonexempt classes of lenders of which defendant is one.
 

 In so far as the provisions of the usury law and the constitutional provision are similar, or substantially so, it is obvious that they are not in conflict, and it is further clear that the repealing clause of the amendment did not expressly repeal the similar provisions of the usury law, inasmuch as that clause only supersedes laws “in conflict therewith”. It is not at all unusual to find both a statutory provision and a constitutional provision identical in their operation, and in such event both are considered as the source of the right conferred or penalty imposed. In
 
 Kaysser
 
 v.
 
 McNaughton,
 
 6 Cal. (2d) 248 [57 Pac. (2d) 927], an almost identical problem to the one here under discussion was presented. That case involved the question as to the effective repeal date of the stockholders’ liability. This liability was first imposed by statute. Later, a substantially similar provision was inserted in the Constitution. While both were in existence, the court held the liability was imposed by both the statute and the Constitution. At a still later date the
 
 *174
 
 constitutional provision was repealed. It was held that the statutory provision still remained and served to impose the liability until the statute was itself repealed. (See also
 
 Gardiner
 
 v.
 
 Bank of Napa,
 
 160 Cal. 577 [117 Pac. 667].)° It therefore follows that in so far as the provisions of the usury law and the constitutional amendment are identical, or substantially so, such provisions were not repealed by the constitutional provision.
 

 In so far as the constitutional amendment changes the maximum permissible rate of interest from 12 per cent to 10 per cent for all practical purposes, it constitutes an amendment of sections 1 and 2 of the usury law. It is true the usury law is an initiative measure, but it is quite clear that an initiative measure may be changed or amended by a constitutional provision adopted by the people. Article IY, section 1, provides that no act adopted by the people “shall be amended or repealed,except by a vote of the electors”. Article XX, section 22, was adopted by such a vote.
 

 Defendant urges that the usury law was repealed under any one or all of three theories—(1) that it was expressly repealed by the repealing clause of paragraph 4; (2) that it was impliedly repealed because inconsistent with the constitutional provisions; and (3) that a repeal by revision was accomplished. In connection with the last two theories, appellant relies strongly on the reasoning of
 
 Fenton
 
 v.
 
 Markwell & Co.,
 
 11 Cal. App. (2d) (Supp.) 755 [52 Pac. (2d) 297], in which it was held the usury act was repealed by the adoption of the constitutional provision. After a careful consideration of the applicable rules of construction, we are convinced that none of the theories advanced by appellant is sound.
 

 As far as the alleged express repeal is concerned, little need be said. Article XX, section 22 only repeals or supersedes “all provisions of this constitution and laws enacted thereunder in conflict therewith”. Such clauses have uniformly been held to repeal or supersede only those portions of prior acts repugnant to the later act. It must be presumed that the legislature in proposing and the electorate in adopting the constitutional amendment acted with full knowledge of the existence of the prior statute relating to the same general subject. Such a limited repealing clause expresses indirectly the intent that non-conflicting prior statutes shall remain in force. It is well settled that such a repealing
 
 *175
 
 clause operates as an express limitation upon the extent to which the former acts shall cease to be operative, namely, only in so far as they are actually inconsistent with the new act. These rules of construction are well settled. The appropriate rule, supported by many authorities, is stated as follows in 59 Corpus Juris, page 903: ‘ Such a clause is effective to repeal all prior general laws or parts thereof, which are repugnant to, inconsistent and irreconcilable with, the repealing statute. ... On the other hand, the clause operates as an express limitation upon the extent to which it is intended that former acts shall cease to be operative, namely, only so far as they are actually inconsistent with the new act. Also, it may be considered as a recognition, or indication of a purpose, that prior acts or parts of acts which are not repugnant to and inconsistent with the new act are to remain in force, ...” (See, also, 25 R. C. L., p. 912;
 
 Holden
 
 v.
 
 Minnesota,
 
 137 U. S. 483 [11 Sup. Ct. 143, 34 L. Ed. 734].)
 

 The arguments based on implied repeal and repeal by revision are equally without merit. One of the cases strongly relied upon by appellant expressing these rules is
 
 Mack
 
 v.
 
 Jastro,
 
 126 Cal. 130 [58 Pac. 372], holding that the County Government Act of 1897 in reference to the issuance, sale and disposition of county bonds was intended to substitute a new and complete scheme in relation to the subject matter, and to have superseded certain earlier acts dealing with the same subject. At page 132 the court stated: “We think, however, that a reading of the two sections at once discloses that the legislature in the County Government Act of 1897 designed and devised a new and complete scheme for the issuance of county bonds, and, while it is true that repeals by implication are not favored, whenever it becomes apparent that a later statute is revisory of the entire matter of an earlier statute, and is designed as a substitute for it, the later statute will prevail, and the earlier statute will be held to have been superseded, even though there be found no inconsistencies or repugnancies between the two.” And again, at page 133, it is stated: “It would unduly and unnecessarily prolong this consideration to set forth the two statutes for purposes of comparison and contrast, but, as has been said, a mere reading of the two will at once disclose that the legislature, by the latter, formulated a plan for the issuance of bonds, full and complete in itself, and, therefore, a plan which superseded its earlier declaration on the matter. It is
 
 *176
 
 not so much a repeal by implication as it is that, the legislature having made a new and complete expression of its will upon the subject, this last expression must prevail, and whatever is excluded therefrom must be ignored.” In
 
 Sponogle
 
 v.
 
 Curnow,
 
 136 Cal. 580, 584 [69 Pac. 255], the rule is briefly stated as follows: “Although an act or part of an act may not be repealed expressly or by necessary implication, still a revision of the whole subject matter covering said act would supersede all such portions as were omitted from the revisory act.” Other similar statements of the rule are to be found in
 
 State
 
 v.
 
 Conkling,
 
 19 Cal. 501;
 
 Treadwell
 
 v.
 
 Yolo County,
 
 62 Cal. 563;
 
 Harris
 
 v.
 
 Cooley,
 
 171 Cal. 144 [152 Pac. 300];
 
 Carter
 
 v.
 
 Stevens,
 
 208 Cal. 649 [284 Pac. 217].
 

 The above statements of the rule likewise serve to fix the extent of its operation. In order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first.
 

 The presumption is against repeals by implication, especially where the prior act has been generally understood and acted upon. To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together. Where a modification will suffice, a repeal will not be presumed.
 
 (Santa Cruz Rock Pavement Co.
 
 v.
 
 Lyons,
 
 133 Cal. 114 [65 Pac. 329];
 
 Smith
 
 v.
 
 Mathews,
 
 155 Cal. 752, 758 [103 Pac. 199];
 
 In re Johnson,
 
 167 Cal. 142 [138 Pac. 740];
 
 Crooks
 
 v.
 
 Peoples Finance etc. Co.,
 
 111 Cal. App. (Supp.) 769 [292 Pac. 1065];
 
 Beneficial Loan Soc.
 
 v.
 
 Haight,
 
 215 Cal. 506 [11 Pac. (2d) 857]; 23 Cal. Jur., p. 694.)
 

 Applying these well-settled principles of construction to the two provisions under consideration, we have no hesitancy in holding that there is nothing in the constitutional amendment indicating an intent that the provision was intended as a revision of the entire subject covered in ,the usury act, nor are the provisions of the two acts so inconsistent or repugnant that the later repealed the earlier by implication. There have already been noted the many provisions of the usury law—material and important provisions— which are entirely consistent with, and in fact supplement, the constitutional provision. As already noted, the constitu
 
 *177
 
 tional amendment fails to expressly provide any remedies-or penalties—matters fully covered in the usury law. These remedial and penalty provisions have been the subject of judicial interpretation for over seventeen years. All that the constitutional amendment does is to reduce the maximum permissible rate from 12. per cent to 10 per cent per annum; to exempt certain enumerated classes of lenders from certain of its provisions; and to place in the legislature a certain degree of control over the fixing of charges made by the exempted groups. In its own sphere of operation, and in so far as it establishes different rules from those found in the usury law, the constitutional provision is supreme—but that is the extent of its operation.
 

 Of course, the placing in the hands of the legislature the control of the charges to be made by the exempted groups is inconsistent with the usury law over which the legislature has no power. This change, however, was brought about by a constitutional provision voted upon and approved by a vote of the people. To that extent the electorate has waived its freedom from interference granted it by article IV, section 1 of the Constitution. This does not indicate an intent to repeal
 
 in toto
 
 the prior measure.
 

 Moreover, the power granted to the legislature by the constitutional amendment is expressly limited in its scope to the regulation and control of the charges of the exempted classes of lenders. As to the nonexempt classes of lenders, the legislature possesses no such power. The usury law applied to all lenders. That has been changed to permit the legislature to regulate the charges made by certain lenders, but except as to reduction of the maximum interest rate, there is nothing to indicate that the constitutional amendment was intended to affect the nonexempt lenders at all.
 

 This interpretation finds some support in the background of the constitutional provision. This court decided the case of
 
 Beneficial Loan Soc.
 
 v.
 
 Haight, supra,
 
 in 1932. In that case it was held that because the terms of the usury law applied to all lenders, the legislature had no power to provide by statute that personal property brokers could charge a higher rate than permitted by the usury law. (See, also,
 
 Crooks
 
 v.
 
 Peoples Finance Co., supra.)
 
 In the Haight case, the court recognized the force of the argument that from an economic standpoint there was need for the classification of certain types of lenders differently from other lenders as to
 
 *178
 
 permissible rates of interest and other charges. The legislature in order to remedy this situation submitted article XX, section 22, to the electorate. It is quite significant that in the argument in support of the amendment sent to all voters (there was no argument
 
 contra),
 
 there is not one word indicating an intent to repeal the usury law. The argument speaks of “inadequacies” of the usury law, and of the individual problems of the exempted groups, and of the necessity for legislative regulation of these groups. Among other things it states, “This measure seeks to rectify the errors of the usury law and cure its deficiencies”. It is quite unlikely that if the legislature in drafting, and the people in adopting, the constitutional provision had intended it to repeal the usury law, such intent would not have been clearly expressed.
 

 From what has been said, it follows that in our opinion, at least as to the non exempt classes of lenders (of which group defendant is a member) the usury law was not repealed by the adoption of the constitutional provision, and plaintiff’s cause of action was not affected thereby.
 

 The further and final contention of defendant is that assuming that the sale of the property under the trust deed, as detailed above, constituted a payment of interest, and assuming that the usury law has not been repealed, no usurious interest was in fact paid by the defendant. This contention is based upon the claim that there were two other charges against the fund in the hands of the trustees, after said sale under the trust deed, which the trustees were required to satisfy and pay, and that after the payment of these two items, the balance remaining in their hands, if the whole thereof was applied to the payment of interest on the aggregate of the amount advanced during the year, would not exceed the rate of 12 per cent per annum. These two items were (1) interest on the sum of $134,396.11 at the rate of 7 per cent per annum from the date of the maturity of said promissory note, August 15, 1928, to the date of the sale, December 31, 1928, amounting to the sum of $3,527.86; (2) the sum of $6,193.98, costs and attorneys’ fees in defending certain mechanics’ lien cases and for conducting the trustees’ sale.
 

 We think the claim of defendant respecting the item of $3,527.86 should be sustained. The note and trust deed provide for interest at the rate of 7 per cent per annum
 
 *179
 
 payable in advance. There was nothing usurious in the original transaction between the parties as shown by the written instruments evidencing the loan. There was nothing in the dealings of the parties which ran counter to the provisions of the usury law prior to the date of the trustees’ sale. It was only in the application of these proceeds of the sale that usurious interest or excessive profit is claimed to have been extorted. We are not overlooking the entries made by defendant in its books of account wherein the plaintiff was charged with the items of brokerage and interest, but mere bookkeeping entries could not create any liability against the defendant, or in favor of the plaintiff. It is only when there has been an actual payment of usurious interest that the one receiving such interest is held to have violated the terms of the usury law and accordingly held liable for the penalties thereby imposed.
 
 (Liebelt
 
 v.
 
 Carney,
 
 213 Cal. 250 [2 Pac. (2d) 144, 78 A. L. R. 405];
 
 Grall
 
 v.
 
 San Diego Bldg. & Loan
 
 Assn., 127 Cal. App. 250, 257 [15 Pac. (2d) 797];
 
 Coulter
 
 v.
 
 Collins,
 
 71 Cal. App. 381, 385 [235 Pac. 465].) It was not, therefore, until the interest and brokerage were actually paid through the trustees’ sale that it is claimed the usury law was violated. The defendant was, therefore, entitled to interest at the rate of 7 per cent on this amount of $134,396.11 from the date of maturity of the note to the date of the sale amounting as we have seen to the sum of $3,527.86. This amount should be taken into consideration in determining whether the amount of interest or profit which the defendant received through the trustees’ sale exceeded the maximum amount permitted by the usury law.
 

 The item of $6,193.98 referred to above involves some further facts. At the time of the trustees’ sale, December 31, 1928, there were on file and of record a number of mechanics’ liens against said property for work done and materials furnished in the construction of said buildings. A suit to foreclose four of these liens had been instituted on December 28, 1928, and was pending at the date of said sale, and suits to foreclose the two remaining liens were commenced in the following March after the sale under the trust deed. The defendant expended various sums of money in the defense of these suits. In one of these suits there was an appeal from the judgment which was reversed and a petition for a hearing denied by this court on June 20, 1932.
 
 (Keeling
 
 
 *180
 

 Collection Agency
 
 v.
 
 Penziner,
 
 .123 Cal. App. 296 [11 Pac.(2d) 24].)
 

 The defendant at the trial presented an itemized statement purporting to show that it had paid out after the date of said trustees ’ sale the sum of $13,021.72 as costs and attorneys’ fees in the defense of said mechanics’ lien action; for legal services rendered by its attorney in the foreclosure proceedings ; for taxes on said property which were a lien thereon at the date of the trustees’ sale; and a charge of $451.02 for ornamental plastering on said building. The court found, “That the sum of $6,193.38 is a reasonable allowance for legal services and costs involved in said suits and in the proceedings leading up to and including the trustees’ sale’’. However, it refused to hold that these charges were properly payable by the trustees out of the proceeds of the sale under the trust deed. As we have seen there was only one of said lien suits pending at the date of said sale, and it had been commenced only three days before said sale. There is no evidence that the trustees or the defendant as beneficiary paid out any costs whatever or any attorneys’ fees, or became liable for any costs or attorneys’ fees prior to said sale on account of this pending action. Whatever costs or attorneys’ fees the defendant incurred or paid out for that purpose after said sale it expended as purchaser, and not as a beneficiary under said deed of trust, and such payments were not chargeable to the plaintiff and were not properly payable by the trustees out of the proceeds of the sale. The rule is well settled that the purchaser at execution sale, or under a foreclosure sale under a deed of trust, takes the property as it stands and subject to all liens against it.
 
 (Jordan
 
 v.
 
 Myres,
 
 126 Cal. 565 [58 Pac. 1061];
 
 Boggs
 
 v.
 
 Fowler,
 
 16 Cal. 559 [76 Am. Dec. 561];
 
 Breeze
 
 v.
 
 Brooks,
 
 71 Cal. 169, 181 [9 Pac. 670, 11 Pac. 885].) As to the taxes paid by the defendant after the sale, although a lien against the property prior to the sale, they were paid by him as purchaser and not as the beneficiary under the trust deed. Defendant was not, therefore, entitled to be reimbursed out of the proceeds of the trustees ’ sale for money paid to discharge said taxes.
 
 (T. L. Reed Co.
 
 v.
 
 Kruse,
 
 220 Cal. 181 [29 Pac. (2d) 856].) The item of $451.02 for ornamental plastering was simply a voluntary payment by the defendant. It does not appear even to have been secured by a lien against the property. This disposes of all the items of said statement except the
 
 *181
 
 item of $2,027 paid out as legal services in the foreclosure of said deed of trust. This charge was a proper charge, and one which the trustees were entitled to pay from the proceeds of the trustees’ sale. It should have been allowed by the trial court in its computation for the purpose of determining whether there was any usury in the payment of interest, and also in determining the amount of interest upon which treble damages should be allowed in case the payment of interest was usurious. With these two items just discussed allowed, the account between the parties upon the trustees' sale stood as follows:
 

 Cash advanced up to maturity of note..........$134,396.11
 

 Interest thereon at 7% per annum from August 16,
 

 1928, to December 31, 1928................ 3,527.86
 

 Attorneys’ fees in foreclosure proceedings...... 2,027.00
 

 Total................................$139,950.97
 

 This amount taken from $150,000, for which the property was sold at the trustees’ sale leaves the sum of $10,049.03, as the amount of interest or profit that was paid to the defendant through the trustees ’ sale. Interest on the several amounts of money advanced from the respective dates of their advancement to the date of the maturity of said promissory note, computed at the rate of 12 per cent per annum, as testified to by an expert accountant, was the sum of $7,434.48. We find no serious contention on the part of the defendant that this amount is incorrect. The interest, or profit, therefore which was paid the defendant exceeded the maximum amount permitted to be charged by the usury law by the difference between $10,049.03 and the sum of $7,434.48, or the sum of $2,614.55. The plaintiff, therefore, having been compelled to pay defendant the sum of $10,049.03 as a profit on said loan which amount exceeded the maximum amount of profit permitted to be paid on said loan under the provisions of the usury law of this state, defendant is liable to plaintiff in treble the amount of profit so paid by the plaintiff, or the sum of $30,147.09, in which amount plaintiff is entitled to judgment against the defendaiit.
 

 Our determination of the questions involved in the appeal of the defendant from the judgment herein leaves but little to be said respecting the appeal of the plaintiff. This appeal involves the sum of $6,693.98 which the trial court charged against the plaintiff and deducted from the certain amounts
 
 *182
 
 found to be due plaintiff. This sum of $6,693.98 is made up of the two items of $6,193.98 and $451.02, already given consideration in this opinion, and a third item amounting to $48.98, being money paid out by R. L. Flint after the trustees ’ sale from funds which were paid to him by the defendant prior to said sale. We have already held that the item of $451.02 was improperly charged against plaintiff, and for the same reason, the item of $48.98 is not a legal charge against plaintiff. We have further held that of the sum of $6,193.98 only the sum of $2,027, attorneys’ fees paid for services rendered in proceedings to foreclose said trust deed, was a legal charge against the plaintiff, and we have made allowance for it accordingly. It should not, therefore, be again deducted from any amount found to be due the plaintiff. The remaining items malting up said sum of $6,193.98 represent payments made by the defendant as purchaser at said trustees ’ sale and subsequent to said sale and were, therefore, not chargeable to the plaintiff. We conclude in view of this situation that the defendant is not entitled to any deduction from the amount found to be due plaintiff on account of any of the amounts making up said item of $6,693.98.
 

 The judgment is accordingly modified by striking therefrom the following words, “thirty-eight thousand and nine hundred and nine and 91/100 dollars ($38,909.91) ” and inserting therein in the place of said words stricken out the words, “thirty thousand and one'hundred and forty-seven and 9/100 dollars ($30,147.09) ”, and as so modified the judgment is affirmed. Costs on appeal to be paid by the respective party incurring the same.
 

 Shenk, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.
 

 Rehearing denied.