[Civ. No. 10864.   First Appellate District, Division Two.—September 26, 1938.]

In the Matter of the Estate and Guardianship of MARY O'CONNOR (an Incompetent Person).   MARY O'CON-NOR, Appellant, v. JOSEPH P. DONAHUE, Respondent.

James M. Thomas for Appellant.

Frank J. Perry for Respondent.

NOURSE, P. J.—An appeal was taken by the ward in an incompetency proceeding from the specific portion only of the order of the trial court confirming the referee's report, sustaining the incompetent's exceptions to the five annual accounts of her guardian, and settling the guardian's accounts, which portion appealed from refused to allow the ward interest on certain items found to have been misappropriated by the guardian.

On May 21, 1930, Joseph P. Donahue, a brother of Mary O'Connor, an incompetent, was appointed guardian of her person and estate. He gave a surety bond in the sum of $17,000 executed by the Massachusetts Bonding and Indemnity Company. On June 1, 1931, he filed his first annual account, charging himself with moneys and bonds of the

total value of over \$64,000. The surety bond was not increased, and, though a joint control arrangement was made, it was never exercised, and the banks paid out the funds of the estate on the check of the guardian alone.

■ From the time of his appointment, the guardian commenced the looting of the estate of his sister and continued until she was restored to competency on July 16, 1935. On the day following his appointment, the guardian drew a check for \$500 to himself and appropriated the proceeds to his own use. From a total of over \$71,000 in cash and bonds received by him as guardian he delivered to Mary O'Connor about \$30,000 when she was restored to competency. His five annual accounts showed expenditures purportedly made for the benefit of the ward which were found to be false and fraudulent, and the final account showed a "shortage" of over \$4,000 for which he made no explanation. To carry out his plan of looting the estate he involved his wife, his relatives, the nurses, his liquor dealer, his grocer, pharmacist, and his barber. He had his wife charge the ward for board and nursing at her home when the ward was confined to a hospital where he paid board and nursing charges for the same period; he had relatives come as guests in his house and then charged the ward's estate for their board and lodging; he permitted his doctor to present a highly exorbitant bill for services which he claimed to have rendered for the ward; he drew checks on the estate in favor of the nurses far in excess of the amount of their wages, had them cash the checks and give him the difference for his own use; he purchased large quantities of liquor for his own use and paid the dealer with checks drawn on the estate; he bought drugs, groceries, flowers, clothing and household supplies for which he paid with checks upon the estate. In many of these transactions, small quantities of goods were purchased and checks far in excess of the amount charged were given and cashed. The proceeds he put in his pocket, and his only explanation was that he "gambled it". In the same manner he purchased his own clothing and household supplies, and paid his dentist, oculist and barber, and his wife's laundry.

These are the circumstances which present for determination the single question whether the ward was entitled to compounded interest upon these misappropriations. The appellant contends that it is a matter of right, the respondent

contends that the allowance of interest is committed wholly to the discretion of the trial court.

The applicable rule of law is found in the early case of *Wheeler* v. *Bolton*, 92 Cal. 159, 172 [28 Pac. 558], where the court said: "The general rule applicable to an executor, as well as to any other trustee, is, that, except in cases in which he has been guilty of some positive misconduct or willful violation of duty, he is not to be charged with compound interest. In cases of mere negligence, no more than single interest is ever added to the loss or damage resulting therefrom. In cases where he has mingled moneys belonging to his trust with his own funds, and used them for his own advantage, courts have charged him with compound interest, upon the theory that in the absence of evidence to the contrary, he will be presumed to have received such profits from their use." In *Estate of Piercy,* 168 Cal. 755, 757 [145 Pac. 91], the earlier cases are cited to the point that, when the executor has been guilty of willful violation of duty, or misapplication of the funds of the estate to his own use, there is no room for discretion, but the beneficiaries are entitled to compound interest. In *Gaver* v. *Early,* 191 Cal. 123, 125 [215 Pac. 394], the court, following the same principle, ruled that such interest should run from the dates of the respective misappropriations. The same rule was followed in *Estate of McLellan,* 8 Cal. (2d) 49, 55 [63 Pac. (2d) 1120].

These authorities control all the items which the trial court found to have been drawn by the guardian and appropriated to his own use and to the use of members of his family, and the items found to have been payments for goods purchased for the use of himself and members of his household. ▇ The excessive payments for the services of the doctor and the payments to himself as guardian under successive orders of court for services rendered as such guardian are items which do not appear to be the result of either misconduct or willful breach of duty. In the first instance, it was necessary to take evidence to determine the reasonable value of the doctor's services before the amount of his overcharge could be determined. In the second instance, the withdrawals were all made under order of court fixing the guardian's fees as such at the time of the approval of the successive accounts. Though these accounts and the accompanying orders were subject to review and revocation at the time of the settlement of the final ac-

count *(In re Giambastiani,* 1 Cal. App. (2d) 639, 643 [37 Pac. (2d) 142]), it cannot be said that the guardian was guilty of defalcation when he paid to himself the fees allowed pursuant to those orders. Since these funds, as well as the payments to the doctor, may have been withdrawn in good faith, the appellant has failed to show wherein the order of the trial court refusing to add interest was not justifiable. Such ruling appears to be in harmony with section 2238 of the Civil Code which fixes the liability ''only to make good whatever is lost to the beneficiary by his error''. But, in any event, a substantial question of fact is involved, and appellant has not met the burden of showing error in the court's finding.

The ward has appealed separately from an order allowing a fee of $150 for services rendered as attorney for the guardian. Two grounds of attack are made on this order— that the ward's appeal ousted the trial court of jurisdiction to make the order, and that the allowance of any fee to the attorney was a breach of discretion.

Neither ground is sound. The ward's appeal was limited to that portion of the order only which refused to award her compound interest on the items specified. The order settling the account was conditional in that it provided for a release and discharge of the guardian when certain specified payments had been made. For this purpose the court retained jurisdiction of the guardianship ''proceeding'', section 1555, Probate Code. This is not a case like *Kinard* v. *Jordan,* 175 Cal. 13 [164 Pac. 894], nor the cases cited in 2 California Jurisprudence, section 178, where orders were made materially affecting the judgment or order appealed from. Here the order fixing attorney's fees was not embraced in the order settling the account. It was an independent matter which had no relation to the matter appealed.

Discussion of the second point is foreclosed by the uniform rule that such allowances always rest in the discretion of the trial court. *(Estate of McLellan, supra.)* It does not appear here what services have been rendered, and hence there is no support for the assertion that such discretion was abused.

The portion of the order refusing to allow interest is reversed. The order allowing attorney's fees is affirmed.

Sturtevant, J., and Spence, J., concurred.