[S. F. No. 17772. In Bank. Dec. 28, 1948.]

J. L. FULLER, Appellant, v. LaNOR CATHERINE WHITE, as Administratrix, etc., Respondent.

Gregory, Hunt, Melvin & Faulkner and Melvin, Faulkner, Sheehan & Wiseman for Appellant.

John K. Hagopian for Respondent.

SCHAUER, J.—Plaintiff appeals from an adverse judgment in his action against the administratrix of his deceased brother's estate, to recover on a promissory note. Trial was before the court sitting without a jury. We have concluded that for the reasons hereinafter stated the judgment must be reversed.

Plaintiff alleges and the court found that on October 1, 1931, plaintiff's brother, Lloyd M. Fuller, since deceased, executed and delivered to plaintiff his promissory note, as follows:

"$ __1,500.00__         __October 1__ 1931

__any time__ after date __I__ promise to pay to the order of __my brother, J. L. Fuller__ or his beneficiary

      __- - - FIFTEEN HUNDRED - - -__     Dollars

Payable at __any time my financial condition permits__

Value received with interest at __6%__ per cent per annum-monthly.

             __Lloyd M. Fuller__

| No. | First | Due | to run in accordance with our under- |

standing

J. L. Fuller

WITNESS

[endorsed on back as follows:]
In the event of my death this
promissory note is to be paid
out of my estate with precedence
over any other claims.

Lloyd M. Fuller      "

It was further alleged and found that Lloyd M. Fuller, the maker of the note, died on September 26, 1945; that in due course defendant became administratrix of his estate; that plaintiff presented to the administratrix within the time, at the place, and in the form provided by law, his claim on the note in the total sum of $2,775, which included both the $1,500 principal and also interest of $1,275 accrued from October 1, 1931, to December 1, 1945, at 6 per cent per annum; that the administratrix rejected the claim.

The court also found that plaintiff's action was barred by the statute of limitations (Code Civ. Proc., § 337, subd. 1), and, further, that the "note was paid in full prior to the filing" of plaintiff's action. Accordingly, the judgment was rendered for defendant.

Plaintiff-appellant urges as grounds for reversal of the judgment:

1. That the evidence as a matter of law fails to show that action on the note was barred by the limitations statutes.

2. That certain of the evidence upon which defendant relies to establish payment of the note was erroneously admitted over his proper objection that it was hearsay and that the finding of payment is without support in the evidence.

█ 1. *The Statute of Limitations.* This action was commenced on March 25, 1946. Inasmuch as it is specified in the body of the note that the principal sum of $1,500 is to be paid "at any time my [the maker's] financial condition permits," it is essential, in order to establish the defense of the statute of limitations, that the evidence show that such financial ability antedated the applicable statutory period prior to the filing of the action. (*Van Buskirk* v. *Kuhns* (1913), 164 Cal. 472, 475 [129 P. 587, Ann.Cas. 1914B 932, 44 L.R.A. N.S. 710].) █ In this case the period would be four years prior to the death of the maker (Code Civ. Proc., § 337,

subd. 1) and, if the four-year period had not fully run, an additional year between the death of the maker and the filing of this action (Code Civ. Proc., § 353; 11A Cal.Jur. 836-837, § 595).* Plaintiff produced no evidence that decedent was able to pay during his lifetime, and rests the case upon decedent's signed declaration on the back of the note that "In the event of my death this promissory note is to be paid out of my estate with precedence over any other claims." Defendant's contention that there was a burden on plaintiff to prove that decedent, during his lifetime, was "financially able" to pay the note is without merit.

On cross-examination the divorced wife of decedent, whom plaintiff had produced as a witness, testified that in a conversation with decedent's daughter, following his death (on September 26, 1945), she (the witness) "said that I felt Mr. Fuller [decedent] should have paid it, inasmuch as he was making quite a lot of money *since the war started.* I know that because he had told me about many large contracts. And I stated to them, I believed Lloyd must have paid the note. He later told me he did not, since we became very good friends, but he passed away, but he told me he had not paid it, because I asked him." (Italics added.) Defendant argues that the quoted testimony would support a finding (implied) that decedent was able to pay the note during his lifetime and prior to the full term of the applicable limitations statutes. But, as to a resident of the United States, speaking (subsequent to September 26, 1945) of another resident in business in the United States, it would scarcely seem reasonable to assume that by referring to a date "since the war started," the speaker would mean any date earlier than that of Japan's attack on Pearl Harbor, December 7, 1941. If the reference was to that date the action, obviously, is not barred. Moreover, in reference to any date possibly contemplated, the mere conclusion of the witness that decedent "was making quite a lot of money since the war started . . . because he told me about many large contracts" does not constitute evidence legally sufficient to show ability to pay the note at any time prior to the statutory period; there is a total absence of objective evidence as to amounts earned and financial obligations incurred. Furthermore, the words "*since the war started*" leave only to conjecture the length of the period which in the mind

*Plaintiff's claim on the note was rejected by defendant administratrix on January 2, 1946, and this action was filed on March 25, 1946, within the period specified by section 714 of the Probate Code.

of the witness may have been attributed to the word "since." The statute of limitations is an affirmative defense; we are satisfied that defendant did not, by the above quoted evidence, meet the burden of proving such defense.

Defendant points to no other evidence in the record, and we have discovered none, which would indicate that decedent was able to pay the note while he lived, or, if able, when he acquired that ability. There is no proof of the amount of cash on hand, or of the value of other assets, if any, left by the decedent. It follows that the court erred in finding that the principal sum of the note was barred by the statute of limitations.

As to the matter of interest on the principal sum the note reads "Value received with interest at 6% per cent per annum—monthly." This provision must mean either that the interest was to be compounded monthly and paid with the principal or that simple interest was to be paid monthly. Since it is the rule that compound interest is not to be allowed in the absence of a showing that such was clearly the agreement of the parties (Stats. 1919, p. lxxxiii, § 2; *Schneider* v. *Turner* (1938), 10 Cal.2d 771, 775 [76 P.2d 668]; *Robertson* v. *Dodson* (1942), 54 Cal.App.2d 661, 665 [129 P.2d 726]), the provision here must be understood to call for simple interest only. It follows that the interest was due monthly and that the action is barred insofar as concerns instalments of interest which accrued prior to the applicable limitation period.

2. *Evidence Concerning Payment*. As already stated, the note upon which this action is based was executed on October 1, 1931. Thereafter, on June 17, 1932, a life insurance policy numbered 1,692,531, in the principal sum of $2,000, was issued by the Penn Mutual Life Insurance Company of Philadelphia upon the life of Lloyd M. Fuller, the maker of the note; the policy is by its terms payable to the "executors, administrators or assigns" of the insured. Under the date of August 11, 1932, the insured executed a "Designation of Beneficiary" by which the policy was made payable "to my brother, Jo L. Fuller, if he survives me, otherwise to my sister-in-law [the wife of Jo L. Fuller] . . . if she survives me, otherwise to said brother's executors, administrators or assigns"; the insured's then wife joined in executing the described document. Both the insurance policy and the "Designation of Beneficiary" are in evidence as exhibits. Following the death of the insured (on September 26, 1945) the insurance company, on November 16,

1945, paid the entire proceeds of the policy, in the total sum of $2,066.88, to Jo L. Fuller, plaintiff herein. Defendant contends that such payment constituted full payment of the note upon which plaintiff bases this action, while plaintiff urges that there was no substantial evidence properly before the court which links together the note and the policy in such degree as to support the court's finding that the note had been paid. There is no evidence that the note was paid otherwise than by virtue of the insurance company's payment under the policy.

Defendant, in support of her position that plaintiff's receipt of the policy proceeds discharged the note, offered in evidence a letter dated October 25, 1945 (one month after the insured's death) from the supervisor of claims at the home office of the insurance company in Philadelphia, Pennsylvania, to the company's general agent in San Francisco. The letter refers to the insurance policy discussed hereinabove and, so far as here material, reads as follows: "I feel that it may be possible for us to make payment of the claim under Policy No. 1 692 531 without requiring a Community Property Release. *Under this policy, I find that the insured when applying for the contract requested it to be made payable to Jo L. Fuller, brother if living, otherwise to the brother's wife, and no power was to be reserved to the insured. Premium notices were to be mailed to the brother and when forwarding the application, your office stated that the applicant had borrowed some money from his brother Jo who would pay the premiums on the contract, that the loan was for business purposes and the interest on the loan would be used in payment of the premiums under the contract.*

"The Underwriting Department decided to issue the policy payable to the insured's estate, but sent along a Designation of Beneficiary to bring about the settlement requested in the application. I find that that Designation was executed in San Francisco on August 11, 1932 and signed by the insured and consented to and joined in by a Mrs. Georgia A. Fuller, whom I presume was the insured's wife. . ." (Italics added.) It is to the two sentences of the letter which we have italicized that plaintiff particularly objects. The court admitted the letter over plaintiff's objections that "it is purely hearsay, your Honor. Even if the witness were here, the statements in that letter would be hearsay statements and would not be admissible." On appeal plaintiff urges the same

objections. Defendant argues that under the Uniform Business Records as Evidence Act (Code Civ. Proc., §§ 1953e-1953h), adopted in this state in 1941, the letter was properly admitted as a business record.

Section 1953f of the Code of Civil Procedure provides that "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

In *Loper* v. *Morrison* (1944), 23 Cal.2d 600, 608-609 [145 P.2d 1], this court, in holding certain hospital records to be admissible under the act, declared that "The purpose of this act is to enlarge the operation of the business records exception to the hearsay evidence rule . . . The business entry statutes are not limited to entries in commercial enterprises, and hospital records are properly included within their operation. [Citations.] There is no reason to believe that a hospital record is not as truthful as a record kept by a commercial firm. It is a record upon which treatment of the patient is based, and experience has shown it to be reliable and trustworthy. [Citation.] It is the object of the business records statutes to eliminate the necessity of calling each witness, and to substitute the record of the transaction or event." (See also 32 C.J.S. § 683a, p. 554; *McDowd* v. *Pig'n Whistle Corp.* (1945), 26 Cal.2d 696, 700-701 [160 P.2d 797].)

In the present case the letter in dispute, insofar as it refers to a loan, does not purport to be a record of the insurance company concerning a loan, but on the contrary is no more than a recital by the supervisor of claims, made in 1945 from Philadelphia, Pennsylvania, as to his interpretation of, and opinion based on, statements made in 1932 by the company's San Francisco agent when the latter forwarded to the Philadelphia office the application for the policy. The records of 1932 were not offered in evidence; the letter does not disclose the contents or manner or time of preparation of the records upon which the writer based his conclusions, and the court was provided no factual foundation upon which it could, in the exercise of judicial discretion, properly reach a legal conclusion concerning "the sources of information, method and time of preparation" of any such records, as required by the statute. (Code Civ. Proc., § 1953f.) The

only "act, condition or event" of which the letter might possibly be deemed a record is that of payment by the insurance company to plaintiff herein of the proceeds of the policy. Plaintiff, however, does not deny such payment. The issue is as to whether plaintiff's receipt of the policy proceeds affected his right to now require payment of the note he sues upon here. Inasmuch as the statements in the letter which bear upon that issue were clearly not a record of a loan between the parties to the note, it is equally clear that such letter was inadmissible hearsay and should not have been received by the court. (See *Bebbington* v. *California Western etc. Ins. Co.* (1947), 30 Cal.2d 157, 161 [180 P.2d 673, 1 A.L.R.2d 361].)

■ Defendant urges, however, that other evidence before the court supports the finding that the note has been paid. In this connection the former wife of decedent, from whom he had been divorced in 1943, testified as follows:

"Q. Now, during the time that you and he lived together, do you know of your own knowledge that Mr. Lloyd Fuller assigned to his brother, Jo Fuller, the life insurance policy which he called (sic) in the Penn Mutual Life Insurance Company as security for the payment of the loan that we have just been discussing? A. No, I couldn't say I am positive of that. I do know that there was a policy that Jo maintained himself, that way. Mr. Fuller told me that, because they were to do that; and during the depression we were very hard-up for money and I know he told me at that time that Jo maintained this insurance policy.

. . . . . . . . . .

"Q. Do you recall making an assignment of a life insurance policy, and your consenting thereto, as security for this loan? A. No, I don't. . . . I beg your pardon, I believe I do remember he assigned a policy over to him. I don't remember what policy it was, at the time Mr. Fuller borrowed the money from Jo. But I do remember him taking out a policy for his brother at that time.

. . . . . . . . . .

"Q. Then there was a policy . . . on the life of your former husband in existence at the time? A. At that time, it seems to me—I think—I am not just positive—I can't be positive about this, but it seems to me that we did assign the policy. Now, I am not positive about that.

. . . . . . . . . .

"Q. Tell us what that policy was assigned for. A. I don't

remember, unless it was assigned at the time we borrowed the money."

In addition to the quoted testimony, there was before the court, as a part of the insurance policy which was received in evidence, a photostatic copy of the application for the policy. From the application, which bears the signature of decedent as applicant, it appears that decedent requested that the policy, when issued, be made payable to his brother, Jo L. Fuller, if living, or if not living, then to the brother's wife; and the right to change beneficiary was expressly "not reserved." In a separate boxed-off portion of the application is the following declaration, with the applicant's signature affixed thereto: "Absolute Owner's Joinder (To be signed only if the policy is to be payable to third person as absolute owner.) This application is based on a pecuniary interest in insured's life *greater than amount of policy,* and owner is to have all privileges granted in policy." (Italics added.)

Although the evidence on the subject (disregarding the erroneously admitted letter, hereinabove discussed) is in some respects sketchy and uncertain, and to some extent conflicting, we are satisfied that from the testimony given by decedent's former wife, together with the statements appearing in the policy application, the trial court was warranted in inferring that, as claimed by defendant, the policy was intended by the insured and by plaintiff to constitute security for the note upon which plaintiff here sues. But even if we assume it probable that such inference would have been drawn by the trial court without the corroboratory significance of the erroneously admitted hearsay letter, it does not necessarily follow that payment of the policy proceeds to plaintiff fully discharged the note. The sole evidence relating to payment of the premiums on the policy, aggregating approximately $540 during the policy's life, indicates that they were paid by plaintiff in order to preserve his security. In such case, he is entitled to offset against the policy proceeds of $2,066.88 any sums actually paid by him as premiums, to apply the amount then remaining on hand to the $1,500 principal of the note and to accrued interest thereon (see 21 Cal.Jur. § 40, p. 332), and (if action on the note is not barred by limitation) to have judgment against defendant for any balance of such principal and nonbarred interest then remaining unpaid.

From what has been said it appears that the judgment, in its present form and substance, cannot be sustained. The en-

suing new trial should be conducted in accordance with the views herein expressed insofar as they may be pertinent upon the evidence then adduced. If, upon the new trial, further evidence should warrant a finding that action on the note is barred by the statute of limitations it should be borne in mind that such fact would not affect plaintiff's right to apply the proceeds of the policy, already in his hands (if held as security for the note), to payment of the debt for which it is security. If the court again finds that the policy was given as security for the debt to plaintiff, it should receive competent evidence and make a specific finding determining the amount, if any, of policy premiums paid by plaintiff to preserve his security. It should charge against the policy proceeds any portion of the premiums found to have been paid by plaintiff, should apply the balance of such proceeds to the principal and interest of the note as discussed hereinabove, and, if action on the note is not barred by limitation, should enter judgment in plaintiff's favor for any difference of principal or interest remaining unpaid. In case it should be found that premiums paid by plaintiff, plus the principal of the note, plus interest not barred by the limitations statute do not exhaust the policy proceeds plaintiff would nevertheless be entitled to retain possession of any difference up to the amount of, and to apply it against, the outlawed interest. (See 21 Cal.Jur. § 38, p. 330; § 53, p. 350.)

For the reasons above stated the judgment is reversed and the cause is remanded for a new trial.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.