[No. E007576. Fourth Dist., Div. Two. June 24, 1992.]

ROBERT MACHRIS WESTBROOK, Plaintiff and Respondent, v.
PETER F. FAIRCHILD, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Schlecht, Shevlin & Shoenberger and Allen O. Perrier for Defendant and Appellant.

Grebow & Barish and Arthur Grebow for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, J.—**

I

This case concerns the propriety of a trial court award of prejudgment and postjudgment interest to plaintiff Robert Westbrook in an action arising out of an alleged breach of a contract to make a will.

At trial, four causes of action were submitted to the jury: (1) constructive fraud; (2) fraudulent misrepresentation; (3) breach of the implied covenant of good faith and fair dealing; and (4) bad faith breach of contract. The jury answered special interrogatories by finding that defendant Peter Fairchild had committed constructive fraud and had breached the implied covenant of good faith and fair dealing. The jury awarded plaintiff $500,000 in compensatory damages and $200,000 in punitive damages.

Following the trial, Mr. Fairchild filed motions for a new trial and for judgment notwithstanding the jury's verdict. The trial court granted both motions on grounds of: (1) instructional error; (2) insufficiency of the evidence; and (3) excessive damages. Mr. Westbrook appealed.

In an opinion filed May 12, 1989, this court held that the trial court erred in granting the motions. This court examined the claims of instructional error and found none. We further found substantial evidence of Mr. Fairchild's breach of the implied covenant of good faith and fair dealing when Mr. Fairchild revoked a will he had made in favor of Mr. Westbrook, despite an agreement by Mr. Fairchild that he would make, and not revoke, such a will. We therefore reversed the granting of the motions and directed the trial court to reinstate the jury's verdict in favor of Mr. Westbrook.

Following remand, defendant Fairchild filed a motion for an order settling the form of the judgment. In that motion, he argued that the trial court should not award any prejudgment interest. Mr. Westbrook responded by seeking prejudgment compound interest. The trial court followed our instructions by reinstating the jury verdict. It also signed an amended judgment awarding compound interest.

With regard to the jury's award of compensatory damages of $500,000, the relevant portion of the amended judgment states: "Plaintiff Robert Machris Westbrook have and recover from Defendant Peter F. Fairchild the sum of $500,000.00, *together with compound interest thereon commencing*

*December 31, 1969, at the rate of seven percent (7%) per annum until January 1, 1983, and thereafter at the rate of ten percent (10%) per annum until the full amount of the judgment plus interest and costs is paid."* (Italics added.)

With regard to the jury's award of punitive damages of $200,000, the relevant portion of the amended judgment states that Mr. Westbrook shall recover from Mr. Fairchild "punitive damages in the sum of $200,000.00 *together with compound interest thereon at the rate of ten percent (10%) per annum from the date of the verdict (February 6, 1987) until paid."* (Italics added.) The amended judgment was filed and entered on October 30, 1989.

Mr. Fairchild appeals the amended judgment. He argues that Mr. Westbrook was not entitled to prejudgment interest, and that the trial court erred in awarding such interest. He further argues that the trial court erred in granting compound interest from the date of the verdict until paid.

## II

### PREJUDGMENT INTEREST*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### POSTJUDGMENT INTEREST—COMPOUNDING OF INTEREST FROM THE DATE OF THE AMENDED JUDGMENT

 Mr. Westbrook next contends that the trial court has discretion to award compound postjudgment interest in cases of fraud by a fiduciary. He relies on *Baker* v. *Pratt* (1986) 176 Cal.App.3d 370 [222 Cal.Rptr. 253]: "When a trustee wilfully converts trust property to his own use, he is liable for interest, even though it may not have been prayed for in the complaint. The circumstances of the case determine whether the interest awarded is simple or compound. In cases of mere negligence, no more than single [*sic*] interest is ever added to the loss or damage resulting therefrom, but if the trustee is guilty of some positive misconduct or wilful violation of duty, the court may award compound interest." (*Id.*, at pp. 383-384.)

As noted above, we find *Baker* inapplicable because the discussion preceding this quotation makes it clear that the appellate court held that the trial court's discretion to compound interest arises from Civil Code section 3288, which gives the trial court discretion when it is the trier of fact. The issue in

---

*See footnote, *ante*, page 889.

both the trial court and the appellate court was prejudgment, not postjudgment, interest.

Here, the issue is whether the trial court had the discretionary power to award postjudgment interest of 10 percent compounded, when Civil Code section 3288 is inapplicable because the trial court is not the trier of fact.

We conclude that: (1) The Constitution and statutes limit postjudgment interest to 10 percent simple interest; (2) there is no statutory authority to compound interest; (3) a contrary interpretation would nullify the legislative purpose underlying the judgment renewal statute; and (4) there is no general equitable power to disregard the constitutional and statutory limitations.

Article XV, section 1, subdivision (2) of the California Constitution, added June 8, 1976, provides that "The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both. [¶] In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum. [¶] The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith." █ This section is a limitation on the power of the Legislature to set postjudgment interest rates.[4] It sets a ceiling that the Legislature cannot exceed. (*Morris* v. *Department of Real Estate* (1988) 203 Cal.App.3d 1109, 1112 [250 Cal.Rptr. 432].)

At the time the Constitution was amended in 1976, 7 percent simple interest approximated market rates. Accordingly, the Legislature did not act to set a higher fixed rate, or a variable rate. By 1980, the market rate had risen to approximately 12 percent. Accordingly, the California Law Revision Commission recommended enactment of a statute that would increase the rate to 10 percent, the maximum allowable under the Constitutional provision. The commission's comments are pertinent when considering the purpose of the provision: "Postjudgment interest serves two important functions —it compensates the judgment creditor for the loss of use of the money until the judgment is paid and it acts as an incentive for the judgment debtor to pay the judgment promptly. These functions are served when the rate of interest on judgments approximates the prevailing interest rate in the money

---

[4]The dissent concedes that the Constitution and the statute refer to the maximum interest rate allowed on a judgment. Since the Constitution and the statute do not specify simple or compound interest, we think that it limits *all* interest to a maximum of 10 percent. Thus, any rate, simple or compound, that exceeds 10 percent is prohibited.

market. The judgment creditor is compensated at a rate that would be obtainable were the judgment satisfied and the funds available for investment; the judgment debtor has no incentive to delay payment since it would not be advantageous to invest the money elsewhere." (Recommendation Relating to Interest Rate on Judgments, 15 Cal. Law Revision Com. Rep. 7 (1980) p. 11.) After discussing the possible alternatives, the commission recommended setting the interest rate on judgments at the maximum rate of 10 percent, but reserving the right of the Legislature to change the rate prospectively. The commission argued that a rate of 10 percent was accurate because it was unlikely that the market rate would drop below 10 percent in the future. This alternative was adopted as Code of Civil Procedure section 685.010. ▇▇▇ The market rates referred to are simple interest rates, and, by approximating those rates, we think that the commission intended to recommend a simple interest rate of 10 percent.

Code of Civil Procedure section 685.010, subdivision (a) states: "Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." There is no statutory authorization for a higher rate, and the general rule is that there is no compounding of interest in the absence of specific statutory authority. ▇▇▇ "Interest may not be computed on accrued interest unless by special statutory provision or by stipulation of the parties . . . ." (*Estate of Sharp* (1971) 18 Cal.App.3d 565, 585 [95 Cal.Rptr. 816], citing *State of California* v. *Day* (1946) 76 Cal.App.2d 536, 554 [173 P.2d 399].) *Day* held that "The legal rate of interest in this state is seven per centum. (Cal. Const. art. XX, § 22.) The general rule is that interest may not be computed on accrued interest unless by special statutory provision, or by stipulation of the parties, and in the latter event the amount may not be fixed in conflict with statutory provisions." (*Id.*, at p. 554; *Lilli Ann Corp.* v. *City and County of San Francisco* (1977) 70 Cal.App.3d 162,198-199 [138 Cal.Rptr. 759].)

In *Mendez* v. *Kurten* (1985) 170 Cal.App.3d 481 [215 Cal.Rptr. 924], respondent argued that interest on interest could be given by combining awards under Code of Civil Procedure section 685.010 and Civil Code section 3291. The court held that neither section violates the constitutional prohibition because "neither of those sections, whether applied separately or conjunctively, permits recovery of more than *10 percent simple interest* on a judgment from the date of a judgment's entry until its satisfaction." (*Id.*, at p. 487, italics added.)

▇▇▇ The only exception to the rule that interest on interest (i.e. compound interest) may not be recovered is in situations in which interest is included in a judgment which then bears interest at the legal rate. (45

Am.Jur.2d, Interest and Usury, § 78, p. 71.) One common situation occurs when a judgment is renewed. At that time, accrued interest is included in the new judgment, and the new judgment bears interest at the legal rate.

The renewal sections were also added in 1982 as a result of Law Revision Commission recommendations. (Recommendation Relating to Enforcement of Judgments Law, 16 Cal. Law Revision Com. Rep. 1001 (1982) pp. 1032-1034.) Specifically, Code of Civil Procedure section 683.110 was enacted to provide for renewal, but to prevent renewal more often than every five years.

The commission explained its recommendation as follows: "By preventing the renewal of a judgment more often than once every five years, subdivision (b) of Section 683.110 prevents the judgment creditor from renewing a judgment more frequently merely to compound the interest on the judgment. Renewal has the effect of compounding the interest on the judgment, since interest accrues on the total amount of the judgment as renewed [citations] and the judgment as renewed includes accrued interest on the date of filing the application for renewal." (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., § 683.110 (1982) p. 161.)

By adopting this section, the Legislature apparently considered it desirable to limit the compounding effect of interest on a judgment to once every five years. By allowing compounding over some unspecified lesser period, which could be as often as daily, the trial court has interpreted Code of Civil Procedure section 685.010 in such a way as to nullify the legislative purpose behind Code of Civil Procedure section 683.110.

This is improper. In *Big Bear Properties, Inc.* v. *Gherman* (1979) 95 Cal.App.3d 908 [157 Cal.Rptr. 443], the debtor argued that allowing interest on the portion of the judgment which contained interest was an impermissible compounding of interest. The court stated: " '*Although compound interest generally is not allowable on a judgment*, it is established that a judgment bears interest on the whole amount from its date even though the amount is in part made up of interest. . . . As a consequence, compound interest may in effect be recovered on a judgment whereby the aggregate amount of principal and interest is turned into a new principal. . . .' " (*Id.*, at p. 913, italics added.)

Another common situation in which interest on interest is allowed is when prejudgment interest is incorporated in a judgment which then bears interest. (Cal. Rules of Court, rule 875.) Here, there is already a significant compounding effect because two years of prejudgment interest was incorporated

into the judgment. Mr. Westbrook seeks to obtain additional compound interest by having the interest on the judgment also compounded. There is no constitutional or statutory authorization for the award he seeks. Since we are modifying the October 30, 1989, amended judgment, the new amount of that judgment bears postjudgment simple interest of 10 percent from that date. (*Snapp* v. *State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816, 818-819 [36 Cal.Rptr. 612, 388 P.2d 884].)

The dissent reviews historical materials to find that the repeal of a statute, Civil Code section 1920, in 1918 somehow prevented the voters from enacting any future constitutional provision that would prohibit compounding postjudgment interest. We find the history of the usury law to be unhelpful in discussing the question of postjudgment interest under the 1976 constitutional amendment and the 1982 enactment of Code of Civil Procedure section 685.010. If we considered historical materials relating to the usury law, we would find that that section 2 of the Usury Law prohibits compound interest except by the clear agreement of the parties. (Deering's Ann. Uncod. Measures 1919-1 (1973 ed.) p. 40; *Ninety Five Ten* v. *Crain* (1991) 231 Cal.App.3d 36, 39-40 [282 Cal.Rptr. 141].) ▮ The Usury Law generally limits interest to simple interest, not compound interest. (*McConnell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1978) 21 Cal.3d 365, 366 [146 Cal.Rptr. 371, 578 P.2d 1375, 18 A.L.R.4th 1050]; *McConnell* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1983) 33 Cal.3d 816 [191 Cal.Rptr. 458, 662 P.2d 916]; *Fuller* v. *White* (1948) 33 Cal.2d 236, 240 [201 P.2d 16]; *First American Title Ins. & Trust Co.* v. *Cook* (1970) 12 Cal.App.3d 592, 597 [90 Cal.Rptr. 645]; *Robertson* v. *Dodson* (1942) 54 Cal.App.2d 661, 664-665 [129 P.2d 726]; Warren, *Regulation of Cal. Housing Financing: A Forgotten Consumer* (1961) 8 UCLA L.Rev. 555, 562; Project, *Legislative Regulation of Retail Installment Financing* (1960) 7 UCLA L.Rev. 618, 649.) As *Robertson* states: "[T]he compounding of interest has never been looked upon with favor in this state." (*Robertson, supra,* 54 Cal.App.2d 661, 665.) If interest is compounded by specific agreement, it is usurious if it exceeds the maximum allowable rate. (*Penzner* v. *Foster* (1959) 170 Cal.App.2d 106, 109 [338 P.2d 533].)

The dissent also argues that the Constitution and the statute do not limit "a trial court's inherent equitable power to order that interest on a judgment be compounded, so long as such power is exercised in the interest of justice, i.e., according to those guidelines, established by case law, which set forth the circumstances under which the compounding of interest is proper." Although the dissent finds such power exists in fraud cases, *State of California* v. *Day, supra,* 76 Cal.App.2d 536, states "The compounding of interest has not been approved, legislatively or judicially, in this state in a case like the present." (*Id.,* at p. 554.) *Day* was a fraud case.

We do not believe the trial court, or this court, has any such "inherent equitable power" to disregard the constitutional and statutory limitations stated above. "It has been said that interest on verdicts is purely statutory, and, being in derogation of the common law, cannot be extended beyond the statutory regulation." (47 C.J.S., Interest, § 20, p. 32.) As that work also states: "[A]s a general rule, judgments do not bear interest as a matter of legal right, or under the common law; and, in the absence of statute, courts of chancery [i.e. equity courts] could not grant interest subsequent to the date of the decree on debts of simple contract, not bearing interest in terms. [¶] At the present time, however, interest on judgments is generally allowed by virtue of constitutional or statutory provisions granting such right, even though the obligation on which a judgment is recovered was not interest-bearing in its character; but, as this right to interest is purely statutory and in derogation of the common law, it cannot be extended beyond the statutory regulations or limitations." (*Id.*, at § 21, subd. (a), p. 33.)

There is no "inherent equitable power" to award postjudgment compound interest. To the contrary, exercise of such a power would contradict the authorities cited above, and would result in a postjudgment interest award which exceeds the constitutional and statutory provisions for the payment of 10 percent simple interest on a judgment until satisfied or renewed. In addition, exercise of such a power would invade the province of the jury. The jury had to make its factual determinations based on the equitable causes of action pled. In doing so, it awarded the amounts it found proper to compensate plaintiff for breach of the 1968 contract to make a will. If the trial court, or this court, assumes unfettered discretion to award additional compound interest because of defendant's perceived fraud, the effect is to retry issues already determined by the jury.

We therefore conclude that the judgment bears 10 percent simple interest from the date of entry until satisfied or renewed.

IV

DISPOSITION

The order of the trial court granting plaintiff's motion for interest on the amended judgment is reversed and the case is remanded to the trial court for recomputation of interest as follows: (1) since the damages were not based on a sum certain, preverdict interest shall not be awarded; (2) postverdict interest on the jury's award of $700,000 shall be awarded at the legal rate of 10 percent per annum simple interest from February 6, 1987, to October 30, 1989; (3) the amount of postverdict interest shall be added to the jury's

award of $700,000, and the new amount will be included in the amended judgment of October 30, 1989, as modified; and (4) the total amount of the modified judgment shall bear simple interest at the legal rate of 10 percent per annum from October 30, 1989, until paid.

Dabney, Acting P. J., concurred.

**TIMLIN, J.,** Concurring and Dissenting.—

### INTRODUCTION

I concur in the reasoning and result of the majority opinion regarding the applicability and nonapplicability of prejudgment interest in this case. However, I dissent from the final portion of the majority opinion which concludes that the trial court legally could not order compound interest on the compensatory damages award portion of the judgment itself.

Neither article XV, section 1 of the California Constitution, nor Code of Civil Procedure section 685.010, upon which the majority relies in concluding that compounding postjudgment interest is prohibited by law, refers to compound or simple interest; each provision simply refers to the maximum *rate* of interest allowed upon a judgment, and not to the manner in which that maximum rate must or may be applied to the principal sum awarded by the judgment.[1]

In my opinion, as explained more fully below, the legislative history related to the enactment of article XV, section 1 and the Usury Law makes it clear that while the compounding of interest has been disallowed on all manner of obligations other than judgments, a similar proscription on the compounding of interest on judgments was repealed, and judgments were then specifically excluded from the enumeration of those obligations as to which interest could not be compounded. This legislative history makes it equally clear that the maximum *rate* allowed on judgments, unlike the maximum rate allowed on other types of obligations, was not intended to act as an implicit bar to *compounding* that rate. This means, in turn, that a trial court has the power to order that interest on a judgment be compounded if, pursuant to long-established common law principles, such compounding would be equitable and in the interest of justice.

Given the nature of this case, in which it was established that the defendant took advantage of a confidential relationship with the plaintiff,

---

[1]There is a clear difference between the *rate* of interest and the *manner* in which that rate is applied to the principal. (See *Helland* v. *Helland* (1991) 214 Ill.App.3d 275 [573 N.E.2d 357, 359].)

and profited thereby at the plaintiff's expense, I would therefore affirm the trial court's judgment to the extent it awarded plaintiff postjudgment compound interest.[2]

## DISCUSSION

It is generally accepted that *prejudgment* interest may be compounded " 'upon the theory that in the absence of evidence to the contrary, [a trustee] will be presumed to have received such profits from their use.' " (*Guardianship of O'Connor* (1938) 28 Cal.App.2d 527, 530 [83 P.2d 65], quoting *Wheeler* v. *Bolton* (1891) 92 Cal. 159, 172.) However, there is a paucity of authority on the issue of whether *postjudgment* interest may be compounded.

The majority opinion cites 47 Corpus Juris Secundum, Interest, section 21, for the proposition that "[As] a general rule, judgments do not bear interest as a matter of legal right, or under the common law; and, in the absence of statute, courts of chancery [i.e., equity courts] could not grant interest subsequent to the date of the decree *on debts of simple contract*, not bearing interest in terms." (Maj. opn., *ante*, at p. 897, italics added.) Here, of course, the plaintiff's claim was based in part not on simple contract, but on constructive fraud. The relevant inquiry, then, should be whether courts of chancery had the power to grant interest in *constructive fraud cases*. They did have such power and could "compound interest annually, or at longer or shorter periods, according to the delinquency of the trustee." (90 C.J.S., Trusts, § 342, at p. 599, fn. omitted; Bogert, Trusts & Trustees (2d ed. rev. 1982) § 863 at p. 51: " 'Independent of contract or statute, a court of equity in its sound discretion may require one who has converted to his own use the funds of another to pay damages equal to the legal rate of interest, as compensation to the complainant for the loss of the use of his fund.' " (Fn. omitted, quoting *Cree* v. *Lewis* (1911) 49 Colo. 186 [112 P. 326, 328].) This power included the power to compound interest. (Bogert, *supra*, § 863 at pp. 55-56.)

---

[2] The majority opinion states that I find the equitable power to compound postjudgment interest "exists in fraud cases." (Maj. opn., *ante*, at p. 896.) This is not an accurate representation of my position. I believe such power exists in cases in which, as found by the jury here, a confidential relationship existed between the plaintiff and defendant, during which relationship the defendant entered into a transaction with the plaintiff whereby the defendant's position was improved, or the defendant otherwise obtained a favorable, beneficial or profitable opportunity to the detriment of the plaintiff, i.e., when there has been constructive fraud. (See maj. opn., *ante*, at pp. 892-893, 894-895.) Furthermore, *State of California* v. *Day* (1946) 76 Cal.App.2d 536 [173 P.2d 399], on which the majority relies for the implicit proposition that postjudgment compound interest may not be allowed, was not only *not* a constructive fraud case involving a confidential relationship, but was also not a postjudgment interest case. (See *Big Bear Properties, Inc.* v. *Gherman* (1979) 95 Cal.App.3d 908, 914-915 [157 Cal.Rptr. 443].)

There do not seem to be any California cases explicitly, as opposed to implicitly, on point as to whether the power to compound interest applied to both pre- and postjudgment interest, because generally the cases make no distinction between pre- and postjudgment interest. However, in *Estate of William Stott* (1877) 52 Cal. 403, an executor who commingled funds of the estate with his own business funds was found liable for the presumed profits on the commingled sums. On appeal, the executor contended that he should not have been charged with compound interest, contending, among other things, that compound interest "is expressly forbidden in all judgments by the Civil Code . . . [section 1920]." (*Id.* at p. 405.) Held, any trustee who uses trust property for any purpose unconnected with the trust shall be charged with "legal interest with annual rests," i.e., with interest compounded annually. (*Id.* at p. 406.) Although the court did not specifically refer to whether its holding applied to postjudgment, as well as prejudgment, interest, the fact that the executor argued that compound interest was forbidden by then Civil Code section 1920, which prohibited compounding the interest on *judgments*, indicates that the holding applied to postjudgment interest.

In *Jeanes* v. *Hamby* (Tex.Ct.App. 1984) 685 S.W.2d 695, 700, the Texas Court of Appeals recognized that postjudgment interest *could* be compounded annually if equity so required, but that the trial judge who had rendered the judgment had not so concluded.

In *Bobb* v. *Bobb* (1887) 89 Mo.411 [4 S.W. 511], a seminal case relied upon by the authorities cited in *Palmer* v. *Palmer* (Mo.App. 1991) 805 S.W.2d 326, it was held that a trustee could be charged, in lieu of profits, with interest compounded annually on "*balances* in his hands" (*id.* at p. 515, italics added), the implication being that postjudgment interest on all sums not paid over to the wronged beneficiary could be compounded.

In addition to the treatises and cases noted above which indicate that at common law courts had the equitable power to compound postjudgment interest, the history of the statutes and constitutional provisions related to the compounding of interest and the award of postjudgment interest indicate that this equitable power still exists.

The relevant rule is that "Statutes abridging the jurisdiction of courts of equity are . . . strictly construed. [¶] Thus[,] a court of equity may not be divested of jurisdiction by implication; and general equity powers of a court remain unimpaired except where a statute is so rigid as to inhibit the application of equitable doctrines." (30A C.J.S., Equity, § 6(c), at p. 166, fns. omitted.) " 'Moreover, the comprehensiveness of this equitable jurisdiction

is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." [Citation.]' " (*Mitchell* v. *De Mario Jewelry* (1960) 361 U.S. 288, 291 [4 L.Ed.2d 323, 326, 80 S.Ct. 332], quoting *Porter* v. *Warner Holding Co.* (1946) 328 U.S. 395, 398 [90 L.Ed. 1332, 1337, 66 S.Ct. 1086].) Rules of statutory construction apply with equal force to constitutional provisions. (See 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, §§ 92-101, pp. 145-153; *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 797, fn. 5 [268 Cal.Rptr. 753, 789 P.2d 934].)

Section 2 of the Usury Law (Deering's Ann. Uncod. Measures 1919-1 (1973 ed.) p. 40) provides, in relevant part, that "in the computation of interest upon any bond, note or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith." By its terms, section 2's proscription against compounding interest does not apply to judgments. As was pointed out in *Big Bear Properties, Inc.* v. *Gherman, supra*, 95 Cal.App.3d 908:

" '[I]t has generally been held that a judgment bears interest on the whole amount thereof, although such amount is made up partly of interest on the original obligation, and even though the interest is separately stated in the judgment. *This rule is not affected by statutes which prohibit the allowance of compound interest, such statutes being intended merely as regulations of interest on contracts and not interest on judgments*, and designed to prevent the imposition on borrowers of the heavy exactions by compounding interest at frequent intervals. . . .' (47 C.J.S., Interest, § 21, p. 34; italics added.)" (95 Cal.App.3d at p. 915.)

In other words, there is no statutory or constitutional proscription per se against court-ordered compounding of postjudgment interest awarded pursuant to article XV, section 1 of the California Constitution.

My research has turned up only one case specifically holding that postjudgment interest should not be compounded. That case is *Glenn* v. *Rice* (1917) 174 Cal. 269 [162 P. 1020], an action on a promissory note, which held that "[A judgment] bears interest at the rate of seven per cent per annum from its date by force of the law and not by reason of any declaration it may contain to that effect. (Civ. Code, sec. 1920; Code Civ. Proc., sec. 682.) And such interest must not be compounded. The judgment appealed from was

erroneous in declaring that the interest thereon at seven per cent should be compounded annually. (Civ. Code, sec. 1920.)" (*Id.* at p. 276.)

Civil Code section 1920, in 1917, at the time *Glenn* v. *Rice* was filed, specifically prohibited compounding postjudgment interest. It provided:

"Interest is payable on judgments recovered in the Courts of this State, at the rate of seven per cent per annum, and no greater rate, but such interest must not be compounded in any manner or form."

Civil Code section 1920 was repealed by the initiative measure enacted by the electorate at the general election held on November 5, 1918. That measure, designated as the "Usury Law," provided, in relevant part:

"Section 1. The rate of interest upon the loan or forbearance of any money, goods or things in action or on accounts after demand or judgments rendered in any court of this state, shall be seven dollars upon the one hundred dollars for one year and at that rate for a greater or less sum or for a longer or shorter time; but it shall be competent for parties to contract for the payment and receipt of a rate of interest not exceeding twelve dollars on the one hundred dollars for one year and not exceeding that rate for a greater or less sum or for a longer or shorter time, in which case such rate exceeding seven dollars on one hundred dollars shall be clearly expressed in writing.

"Sec. 2. No person, company, association or corporation shall directly or indirectly take or receive in money, goods or things in action, or in any manner whatsoever, any greater sum or greater value for the loan or forbearance of money, goods, or things in action than at the rate of twelve dollars upon one hundred dollars for one year; and in the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"Sec. 4. Section[] . . . one thousand nine hundred twenty of the Civil Code and all acts and parts of acts in conflict with this act are hereby repealed."

Notably, section 1 of the Usury Law (recited in Deering's Ann. Uncod. Measures 1919-1 (1973 ed.) p. 35) defined the maximum rate allowable on

all forms of interest-bearing obligations, including judgments, while section 2 (recited in Deering's Ann. Uncod. Measures 1919-1, *supra*, p. 40) proscribed the compounding of interest on "any bond, note, or other instrument or agreement," but did not proscribe the compounding of interest on judgments.[3] Furthermore, while section 2 made it clear that the maximum interest rate could not be evaded by "directly or indirectly tak[ing] or receiv[ing] in money, goods or things in action, or in any manner whatsoever, any greater sum or greater value for the loan or forbearance of money, goods, or things in action," no similar proviso applied to judgments.

In 1934, section 22 of article XX of the California Constitution was added. Section 22 did not repeal the Usury Law totally, but did reduce the maximum interest rate upon any loan or forbearance of money from 12 to 10 percent (*French* v. *Mortgage Guarantee Co.* (1940) 16 Cal.2d 26, 33-34 [104 P.2d 655, 130 A.L.R. 67]), and placed in the hands of the Legislature control of the interest rates allowed to be charged by certain exempted groups, such as specified building and loan associations and banks. (*Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 173 [74 P.2d 252].) In 1976, article XX, section 22 of the California Constitution was repealed, and article XV, section 1, was added.

Thus, following the repeal of Civil Code section 1920, which had proscribed compounding the interest on judgments, no constitutional provision or code section was ever enacted in which there was a prohibition against compounding the interest on judgments.[4] It is a basic rule of statutory interpretation that the deletion of an express provision of a statute by exercise of a legislative power is intended to be a substantial change in the law. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 467 [194 Cal.Rptr. 390, 668 P.2d 697].)

Given the fact that former Civil Code section 1920 specifically prohibited compounding the interest rate allowed on judgments and that Civil Code section 1920 was then repealed at the same time as, and in connection with the adoption of, the Usury Law, which specifically prohibited compounding interest rates on all manner of obligations *except* judgments, and that all

---

[3]The majority opinion's analysis fails to consider the salient fact that Usury Law section 2's prohibition against compounding does not apply to judgments. (See maj. opn., *ante*, at pp. 895-896.)

[4]Contrary to the majority opinion's representation, I do not believe that the 1918 repeal of Civil Code section 1920 "somehow prevented the voters from enacting any future constitutional provision that would prohibit compounding postjudgment interest." (Maj. opn., *ante*, at p. 896.) There is no question that the voters have such power. However, I simply find no evidence that since 1918 the voters have enacted a constitutional provision prohibiting the compounding of postjudgment interest.

subsequent constitutional amendments and legislative enactments related to maximum interest rates and the compounding of interest rates have similarly failed to specifically prohibit the compounding of interest on judgments, or to proscribe the obtaining of more than the maximum rate of interest on a judgment through any other means, I conclude that there is no statutory or constitutional impediment to a trial court's inherent equitable power to order that interest on a judgment be compounded, so long as such power is exercised in the interest of justice, i.e., according to those guidelines, established by case law, which set forth the circumstances under which the compounding of interest is proper. In fact, the above described legislative history indicates an implicit grant of such power.

The majority opinion also relies on Law Revision Commission comments to Code of Civil Procedure section 683.110, which section prevents renewal of a judgment more often than once every five years, as further evidence of the Legislature's intent to prohibit compounding postjudgment interest. However, this legislation, as the comments clearly show, was intended to prevent a *judgment creditor* from obtaining, *unfettered by any judicial intervention*, compounded interest on judgments *in every kind of case*, whether based on simple contract, personal injury, fraud, or constructive fraud. Such authority is simply irrelevant to an analysis of whether a *trial court*, in *cases involving the wrongful obtaining of a monetary advantage by a fiduciary over a beneficiary*, has the discretion, *the exercise of which is subject to judicially created standards*, to award postjudgment compound interest.

In this particular case, the jury specifically found that a confidential relationship existed between defendant and plaintiff in March 1975, when defendant, as a fiduciary, breached the covenant of good faith and fair dealing implied in the will contract of August 12, 1968, and committed constructive fraud. It also found that plaintiff, as a beneficiary, had suffered monetary damages from such wrongful conduct. It is well established by case law that when one in a position of trust and confidence uses the property of another for his own purpose, a court may charge him with compound interest on the theory that in the absence of evidence to the contrary, he will be presumed to have received a profit from the use of the property, and, concomitantly, that the beneficiary has been deprived of such profit. (See, e.g., *Estate of Piercy* (1914) 168 Cal. 755, 757-758 [145 P. 91]; *Wheeler* v. *Bolton, supra,* 92 Cal. 159, 172; *Big Bear Properties, Inc.* v. *Gherman, supra,* 95 Cal.App.3d 908, 913.)[5] The above cited cases all involve awards of prejudgment interest, but there is no reason that the same principle, which is equitable in nature, should not apply to postjudgment

---

[5]Because of this rationale, neither prejudgment nor postjudgment interest on punitive damages, as opposed to compensatory damages, should be compounded; compounding is intended *to make sure the beneficiary receives those profits obtained from the beneficiary's*

interest, for it equally may be presumed that during the time the defendant retains the sum payable pursuant to the judgment, the defendant will receive profit from the use of the property, and that the beneficiary will be deprived of such profit.

Accordingly, in my opinion, the trial court had the equitable power to award postjudgment compound interest on the jury's award of $500,000 compensatory damages and, further, given the jury's findings that defendant was in a confidential relationship with plaintiff when he engaged in constructive fraud and violated the implied covenant of good faith and fair dealing of his contract with plaintiff, the court did not abuse its power in doing so.

## CONCLUSION

I would therefore modify the judgment and affirm it as modified, in the following language:

The "Amended Judgment" is modified to provide as follows (*Snapp v. State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816, 822 [36 Cal.Rptr. 612, 388 P.2d 884]): At page 2, line 23, of the "Amended Judgment," the paragraph beginning "Now, THEREFORE, IT IS ADJUDGED" is stricken, as is the full paragraph beginning at page 3, line 3. In place of these two paragraphs is inserted the following language:

Now, THEREFORE, IT IS ADJUDGED, ORDERED AND DECREED that plaintiff Robert Machris Westbrook have and recover from defendant Peter F. Fairchild the sum of $200,000 punitive damages, together with simple annual interest thereon commencing February 6, 1987, at the rate of 10 percent (10%) per annum until October 30, 1989. Plaintiff shall also have and recover from defendant the sum of $500,000 compensatory damages together with simple annual interest thereon commencing February 6, 1987, at the rate of 10 percent (10%) per annum until October 30, 1989. Postjudgment interest on the award of $200,000 punitive damages is awarded at the rate of 10 percent (10%) simple annual interest from October 30, 1989, until the full amount of the $200,000 plus interest is paid. Postjudgment interest on the award of $500,000 compensatory damages is awarded at the rate of 10 percent (10%) interest, compounded annually, from October 30, 1989, until the full amount of the $500,000 plus interest and costs is paid.

I would also order that each party should bear his own costs on appeal.

---

property by the fiduciary to the detriment of the beneficiary. It is not to punish defendant or to make an example of him. (Civ. Code, § 3294.)