# IN THE SUPREME COURT OF CALIFORNIA

ARMIDA RUELAS et al.,
Plaintiffs and Respondents,

v.

COUNTY OF ALAMEDA et al.,
Defendants and Appellants.

S277120

Ninth Circuit
21-16528

Northern District of California
4:19-cv-07637-JST

---

April 22, 2024 (reposted corrected version)

Justice Evans authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Jenkins concurred.

---

RUELAS v. COUNTY OF ALAMEDA

S277120

Opinion of the Court by Evans, J.

Inmates at the Santa Rita Jail in Alameda County work in the kitchen preparing meals for the county jail population and staff under an agreement between the county and a private contractor. They are not paid for their labor. A group of nonconvicted individuals who were performing this labor while detained at the jail sued the county and the private contractor in federal court for failing to pay minimum wage and overtime. The United States Court of Appeals for the Ninth Circuit has asked us to decide whether nonconvicted incarcerated individuals working in a county jail for a private company have a claim for minimum wage and overtime under California law. We conclude the answer is no.

## I. BACKGROUND

Because this matter arises from an interlocutory appeal of the denial of a motion to dismiss under Federal Rules of Civil Procedure, rule 12(b)(6) (28 U.S.C.), we recite the facts as alleged in the operative complaint. We treat the factual allegations as true for the purpose of addressing the certified question. (See *Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1004.)

Under a contract with defendant Alameda County, defendant Aramark Correctional Services, LLC (Aramark) has undertaken the responsibility for operating the food service program and delivery of meals for inmates and staff at all

1

Alameda County Sheriff's Office facilities and satellite facilities. Satellite facilities include county jails located elsewhere in the state. Aramark, a private, for-profit company, provides the contracted-for food services using the industrial kitchen at the Santa Rita Jail. Jail inmates prepare and package the food in the industrial kitchen each day and clean and sanitize the kitchen after the conclusion of the day's food preparation.

Plaintiffs Armida Ruelas et al. are or were pretrial or other nonconvicted detainees confined at Santa Rita Jail who either prepared and packaged food or cleaned and sanitized the kitchen for Aramark. No party has suggested the analysis turns on the basis for the nonconvicted detainees' detention, so we refer generally in this opinion to pretrial detainees. Sometimes plaintiffs work in excess of eight hours a day or 40 hours a week, six or seven days a week. Nonetheless, plaintiffs are not paid any wages for their work on Aramark's behalf.

On November 20, 2019, plaintiffs filed a complaint in federal district court against the County of Alameda, Alameda County Sheriff Gregory J. Ahern (together, the County), and Aramark on behalf of themselves and the class of Santa Rita Jail inmates who perform services for Aramark under its contract with the County. After the district court granted in part and denied in part defendants' motions to dismiss, plaintiffs filed a first amended complaint limited to themselves and other nonconvicted detainees. The amended complaint asserted nine causes of action, including causes of action for minimum and overtime wages. The district court granted in part and denied in part defendants' motions to dismiss the causes of action for minimum and overtime wages. The court reasoned that "while the Penal Code explicitly addresses employment and wages of state prisoners, both in relation to the minimum wage [see Pen.

Code, § 2811] and in the context of incarcerated individuals working for a private company through a joint venture program [see Pen. Code, § 2717.8], the Penal Code does not address such matters for pretrial detainees confined in county jails . . . . Similarly, although the Penal Code authorizes 'the board of supervisors or city council' to require '[a]ll persons confined in the county jail . . . *under a final judgment of imprisonment rendered in a criminal action or proceeding* to perform labor on the public works or ways in the county or city,' there is no similar provision regarding non-convicted incarcerated persons. [Citation.] The Court reads these omissions to imply that the California legislature did not intend to exclude non-convicted detainees working for a private corporation from the Labor Code's protections." The court did, however, agree with the County that government entities "are exempt from state overtime laws" and therefore granted the County's motion to dismiss the claim for overtime wages.

In a simultaneously filed order, the district court certified for interlocutory appeal the legal question of pretrial detainees' entitlement to minimum and overtime wages. The Ninth Circuit accepted the appeal and then certified the following question of state law to this court (see Cal. Rules of Court, rule 8.548(b)(2)): "Do non-convicted incarcerated individuals performing services in county jails for a for-profit company to supply meals within the county jails and related custody facilities have a claim for minimum wages and overtime under Section 1194 of the California Labor Code in the absence of any local ordinance prescribing or prohibiting the payment of wages for these individuals?" (*Ruelas v. County of Alameda* (9th Cir.

2022) 51 F.4th 1187, 1188.)  On January 11, 2023, we agreed to answer the certified question.[1]

## II.  DISCUSSION

To determine whether pretrial detainees working in county jails for private companies are entitled to minimum wage,[2] we examine the interplay among the Penal Code, the Labor Code, and the constitutional provisions governing public-private contracts for inmate labor.  We conclude that such individuals do not have a claim for minimum wage under the Labor Code.

Aramark and the County begin with Penal Code section 4019.3 (all further statutory references are to this code unless otherwise specified), which creates a discretionary scheme for the payment of wage credits to county jail inmates, subject to a cap:  "The board of supervisors may provide that each prisoner confined in or committed to a county jail shall be credited with a sum not to exceed two dollars ($2) for each eight hours of work done by him in such county jail."  This wage credit, which has

---

[1]  To the extent plaintiffs allege they were forced to work, we note those claims are being litigated in the district court.  The Ninth Circuit's question to this court proceeds from the assumption that nonconvicted incarcerated individuals participating in the public-private program do so voluntarily.

[2]  We do not separately address pretrial detainees' entitlement to overtime wages.  No one in this proceeding has articulated a separate argument for payment of overtime wages, distinct from payment of minimum wages.  Moreover, the right to premium pay for overtime logically and legally depends on a right to *some* wage for regular work.  (See Lab. Code, § 510, subd. (a) [basing overtime compensation on a multiple of the employee's "regular rate of pay"].)

remained unchanged since 1975, is far below the state minimum wage for other workers. (See Lab. Code, § 1182.12.)

Defendants argue, and we agree, that section 4019.3 applies broadly to all county inmates, including pretrial detainees, working in the county jail. The federal district court was therefore mistaken in asserting that the Penal Code "does not address" wages for "pretrial detainees confined in county jails."

By its terms, section 4019.3 encompasses all prisoners "confined in or committed to" a county jail. We also note the broad construction accorded similar language — a prisoner "confined in or committed to a county jail" — in nearby section 4019 to describe who is eligible for custody and worktime credits. (§ 4019, subds. (a)(1)–(3), (b), (c); see also *id*., § 4000, subd. 2 [authorizing county jails to be used for detaining persons charged with a crime and "committed for trial"].) We have construed this language to include not only those who are serving a sentence in county jail, but also those who have merely been detained following an arrest as well as those who have been convicted but not yet sentenced. (See *People v. Dieck* (2009) 46 Cal.4th 934, 938–939 & fn. 2.) Because sections 4019 and 4019.3 deal " 'with the same subject matter' " — i.e., the class of county jail inmates who are eligible for an important benefit — the category of inmates confined in or committed to a county jail "should be accorded the same interpretation" in both instances. (See *Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 175 (*Kaanaana*).)

An Attorney General opinion, which is entitled to "considerable weight" (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1087, fn. 17), reached the same conclusion nearly 50 years

ago.  (57 Ops.Cal.Atty.Gen. 276, 283 (1974).)  As the Attorney General then noted, the Legislature enacted section 4019.3 to equalize the wage credits for inmates working in jail with those already authorized by section 4125 for individuals working at industrial farms or road camps.  (See 57 Ops.Cal.Atty.Gen., *supra*, at p. 283; Assem. Com. on Crim. Procedure, Analysis of Sen. Bill No. 1394 (1959 Reg. Sess.) as introduced May 4, 1959, p. 1.)  The "underlying purpose" of both provisions, the Attorney General observed, "is 'to make possible the substitution of constructive labor for profitless prison confinement in order that those who are charged with or convicted of public offenses and deprived of their liberty may become better citizens because of their disciplinary experience.' " (57 Ops.Cal.Atty.Gen., *supra*, at p. 283, quoting § 4100.)  "Penal Code section 4019.3 therefore applies to pre-sentence as well as post-sentence work time, the same beneficial purpose being served in both instances."  (57 Ops.Cal.Atty.Gen., *supra*, at p. 283.)  We find the Attorney General opinion about the scope of section 4019.3 especially persuasive because the Legislature "left intact the language construed" by the Attorney General (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17) when it amended section 4019.3 in 1975 to increase the cap on inmate wage credits from 50 cents to two dollars per eight-hour shift (Stats. 1975, ch. 350, § 1, p. 797).

Counties therefore may — but are not required to — credit inmates, including pretrial detainees, up to two dollars per eight-hour shift, notwithstanding the legal minimum wage, which is much higher.  Indeed, plaintiffs concede that section 4019.3, not the state's minimum wage law, governs the legal wage for "county jail inmates working in public works programs."

To support their claim for minimum wage, plaintiffs focus on a different part of section 4019.3. In their view, section 4019.3 is inapplicable where, as here, the individual is participating in a public-private work program. While there may be sound policy reasons for and against such a distinction, we find no indication section 4019.3 is limited in the way plaintiffs suggest.

No such limitation appears in the statutory text. Plaintiffs instead attempt to infer one from the phrase "in such county jail" in section 4019.3. They argue that because this phrase "appears after the description of the type of prisoners to whom the provision applies — i.e., "each prisoner confined in or committed to a county jail" — "the phrase 'in such county jail' . . . cannot also serve to signify the state of being detained." Plaintiffs conclude: "Thus, 'in such county jail' must refer to work done *for* a county jail." We agree with plaintiffs that it would be surplusage to read "in such county jail" to identify the class of inmates who are subject to section 4019.3; the statute accomplishes that by its earlier reference to "each prisoner confined in or committed to a county jail." But it does not follow that "work done . . . in such county jail" (§ 4019.3) must be construed to mean the inmate's work must be done exclusively *for* the county jail. The word "in" ordinarily describes *where* an event takes place: "inside of, within the bounds or limits of." (*General American Indemnity Co. v. Pepper* (Tex. 1960) 339 S.W.2d 660, 662.)

We find further support for this definition in the legislative history. An analysis of the bill that became section 4019.3 described the purpose of equalizing wage treatment between those inmates "assigned to honor farms," who were already eligible for what the analysis called "a small wage," and

those "working in the jail kitchens, laundry or various maintenance assignments" (Assem. Com. on Crim. Procedure, Analysis of Sen. Bill No. 1394, *supra*, as introduced May 4, 1959, p. 1 [comparing § 4125]).  The latter assignments are all consistent with work that occurs "in" the jail.  We also note that *where* the public-private work takes place has significance in determining the applicability of the minimum wage under the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.).  (See, e.g., *Burrell v. Staff* (3d Cir. 2023) 60 F.4th 25, 42–43, 44–48 [nonconvicted inmates working outside the facility for a private employer stated a claim for minimum wage under federal and Pennsylvania law]; *Watson v. Graves* (5th Cir. 1990) 909 F.2d 1549, 1553–1556 [inmates working for a private construction business outside the jail were entitled to the federal minimum wage and overtime].)  All this leads us to conclude that "work done in such county jail" means work done *at* the jail.

Plaintiffs argue next that section 4019.3 should be limited to public works programs because two neighboring statutes — sections 4017 and 4018 — likewise are limited to public works programs.  Plaintiffs' premise is flawed:  section 4017 is not limited to public works programs, which it defines narrowly and *only* "[a]s used in this section."  In reality, section 4017 has a broader scope; it applies to inmates working "in the prevention and suppression of forest, brush and grass fires" *in addition to* "labor on the public works or ways."  (See *Parsons v. Workers' Comp. Appeals Bd.* (1981) 126 Cal.App.3d 629, 634 [distinguishing inmates who " 'labor on the public works' " under § 4017 from inmates who "fight and prevent forest fires"].)  Moreover, plaintiffs do not fall within section 4017, which applies exclusively to inmates confined "under a final judgment

of imprisonment" or "as a condition of probation" and "required . . . to perform labor," or section 4018, which authorizes county boards of supervisors to make rules for the work required under section 4017.  In any event, the reference to "public works" in section 4017 and its omission from section 4019.3 (as well as from dozens of other provisions in pt. 3, tit. 4, ch. 1 of the Pen. Code) indicates the Legislature knows how to restrict the scope of a provision to public works if it wishes to do so.  (See *People v. Cole* (2006) 38 Cal.4th 964, 979 ["Had the Legislature intended" one subdivision to share the limitation included in a different subdivision, "it no doubt would have included similar language"].)  "It is not for us to insert a limitation the Legislature excluded." (*Kaanaana, supra,* 11 Cal.5th at p. 171.)[3]

Plaintiffs contend that section 4019.3 cannot apply to public-private work programs because such partnerships were prohibited under the law at the time the statute was enacted. As Aramark points out, though, plaintiffs' premise is questionable.  At the time section 4019.3 was enacted, the state Constitution barred contracting out "[t]he labor of *convicts* . . . to any person, copartnership, company or corporation" and further provided that "the Legislature shall, by law, provide for the working of convicts for the benefit of *the State*."  (Cal. Const., former art. X, § 6, italics added.)  It's not immediately apparent the bar applied to the labor of convicted persons in *county jails*, let alone nonconvicted persons such as plaintiffs.  (See *Pitts v. Reagan* (1971) 14 Cal.App.3d 112, 115 ["It has been the practice

---

[3] Reading a "public works" limitation into the statutes that form Part 3, Title 4, Chapter 1 of the Penal Code would also strip many inmates of important statutory rights, including the ability to earn worktime credits under section 4019.

in California, at least in some areas, for 'local county prisoners' to aid in crop harvesting during periods when a farm labor shortage was believed to exist"]; *Copeland v. County of Kern* (1951) 105 Cal.App.2d 821, 825–826 [noting the issue but declining to resolve it]; but see Ballot Pamp., Gen. Elec. (Nov. 6, 1990), analysis of Prop. 139 by Legis. Analyst, p. 65 (Ballot Pamphlet) ["the California Constitution prohibits contracting with any private agency for the use of state prison or local jail inmate labor"].) Yet even assuming that public-private partnerships for the labor of county jail detainees were not permitted at the time of section 4019.3's enactment, it does not follow that the statute cannot apply to such partnerships. Where, as here, "lawmakers choose broad statutory language 'it is unimportant that the particular application may not have been contemplated.'" (*Los Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 192, quoting *Barr v. United States* (1945) 324 U.S. 83, 90; see *People v. Bell* (2015) 241 Cal.App.4th 315, 344 ["Courts have applied these interpretive methods in countless cases, refusing to read an exception into a statute merely because a particular application was likely unanticipated by the enacting legislature"].) Indeed, section 4019.3, by its terms, does not turn on the identity of the employer. Rather, it depends on *who* performs the work ("prisoner[s] confined in or committed to a county jail") and *where* the work is performed ("in such county jail"). And while section 4019.3 constrains what "[t]he board of supervisors may provide" as a wage credit, plaintiffs do not dispute that it is the board of supervisors that is ultimately responsible for the terms of work performed by detainees pursuant to a public-private partnership.

Plaintiffs argue next that even if section 4019.3 has a broad scope and could apply to inmates working at the jail for a public-private partnership, it would not preclude "the application of the Labor Code . . . here" because section 4019.3 is "permissive" and sets forth "how the board of supervisors 'may' act, not how it is required to act." Consequently, plaintiffs assert, section 4019.3 and the minimum wage protections in the Labor Code " 'can occupy the same domain without any inherent antagonism.' " But plaintiffs fail to explain how that could be so. A county may not simultaneously comply with Penal Code section 4019.3, which sets the compensation ceiling at no more than two dollars per eight-hour shift, *and* at the same time comply with the Labor Code, which sets a minimum wage floor that is far above that. Properly understood, section 4019.3 is permissive in that, as the legislative history reveals, it "will <u>permit</u> a County Board of Supervisors to pay a county jail prisoner up to" the amount specified in the statute. (Assem. Com. on Crim. Procedure, Analysis of Sen. Bill No. 1394, *supra*, as introduced May 4, 1959, p. 1.) But it does not ensure county jail inmates working in the county jail will be paid anything at all.

Finally, nothing in Proposition 139, the Prison Inmate Labor Initiative of 1990, imposes an obligation on local governments or private entities to comply with the Labor Code's minimum wage provisions for detainees working in county jails. Proposition 139 repealed the constitutional prohibition on contracting for "[t]he labor of convicts" and provided instead that "[t]he Director of Corrections or any county Sheriff or other local government official charged with jail operations[] may enter into contracts with public entities, nonprofit or for profit organizations, entities, or businesses for the purpose of

conducting programs which use inmate labor." (Ballot Pamp., *supra*, text of Prop. 139, §§ 3, 4, p. 136, strikethrough omitted; see Cal. Const., art. XIV, § 5.) Although the ballot measure granted this power to both state and local custodial officials, it articulated distinct frameworks for each. *State* prisoners were guaranteed by statute compensation "comparable to wages paid by the joint venture employer to non-inmate employees performing similar work for that employer," subject to deductions for taxes, room and board, restitution, and family support, "as determined by the Director of Corrections, which shall not in the aggregate exceed 80 percent of gross wages." (Ballot Pamp., *supra*, text of Prop. 139, p. 137.) More generally, the measure provided that programs for *state* prisoner labor "shall be operated and implemented pursuant to statutes enacted by or in accordance with the provisions of the Prison Inmate Labor Initiative of 1990 and by rules and regulations prescribed by the Director of Corrections." (Ballot Pamp., *supra*, text of Prop. 139, § 4, p. 136.) But none of the wage requirements in the initiative were applied to labor involving *county* jail inmates. For the latter category, Proposition 139 said only that, in addition "to statutes enacted by or in accordance with the Prison Inmate Labor Initiative of 1990," the public-private programs "shall be operated and implemented pursuant to . . . local ordinances." (Ballot Pamp., *supra*, text of Prop. 139, § 4, p. 136.)

The ballot measure was conspicuously silent as to how counties should structure and operate their programs. It did not, for example, "specify the content of the local ordinances." (Ballot Pamp., *supra*, analysis by the Legis. Analyst, p. 65.) Nor was it "possible" for the Legislative Analyst "to estimate the [fiscal] impact of the measure on local governments," since "local

ordinances that would implement contracts for use of jail labor *are not required to contain specific fiscal provisions.*" (*Ibid.*, italics added.)

The question posed by the Ninth Circuit asks us to assume that no local ordinance governs plaintiffs' work at the jail — and, indeed, the parties agree that no such ordinance exists. Plaintiffs argue that in the absence of a local ordinance, the Labor Code necessarily applies. But they fail to grapple with section 4019.3, which sets a specific wage range, well below the state minimum, for convicted and nonconvicted inmates working in a county jail. Notably, plaintiffs do not argue that Proposition 139 displaced section 4019.3, and we would not lightly adopt such a construction. The electorate is presumed to be aware of existing laws — including the compensation scheme in section 4019.3 for nonconvicted county jail inmates — at the time Proposition 139 was enacted. (See *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048.) And unless a conflict between a statute and a provision of the state Constitution is "clear and unquestionable," we must uphold the statute. (*California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, 594; see *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 945 [applying the "strong presumption" against implied repeal].) Consequently, we must "try to harmonize constitutional language with that of existing statutes if possible." (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 410.)

We conclude that article XIV, section 5 of the California Constitution and Penal Code section 4019.3 can be harmonized. (See *Penziner v. West American Finance Co.* (1937) 10 Cal.2d 160, 176 ["nor are the provisions of the two acts so inconsistent or repugnant that the later repealed the earlier by

implication"].)  Under the state Constitution, public-private programs for county jail inmate labor "shall be operated and implemented pursuant to statutes enacted by or in accordance with the provisions of the Prison Inmate Labor Initiative of 1990, and by rules and regulations prescribed by . . . local ordinances." (Cal. Const., art. XIV, § 5, subd. (a).)  Penal Code section 4019.3, which concerns the operation and implementation of public-private partnerships for county inmate labor, appears to be "in accordance with" the provisions of Proposition 139, in that the two enactments can coexist where, as here, no local ordinance provides otherwise.

Plaintiffs and their amici curiae advance several policy arguments for paying a minimum wage to nonconvicted detainees who work in jail.  Plaintiffs emphasize, in particular, that "[n]on-convicted detainees have not been convicted of crimes," but their right to payment for their work is less than that granted to fellow inmates who have been convicted.  They note that the wages for convicted state prisoners, who can be forced to work without pay (U.S. Const., 13th Amend.;[4] Cal. Const., art. I, § 6;[5] Pen. Code, § 2700), *must* be "comparable" to non-inmate workers when the prisoners are laboring, even voluntarily, for a public-private partnership (Pen. Code, § 2717.8).  In contrast, nonconvicted detainees working for a

---

[4]   The Thirteenth Amendment to the United States Constitution provides, in relevant part, that "[n]either slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted*, shall exist within the United States . . . ." (Italics added.)

[5]   Article I, section 6 of the California Constitution provides that "[s]lavery is prohibited.  Involuntary servitude is prohibited except to punish crime."

public-private partnership in the county jail, who *cannot* be forced to work, may be paid nothing.

Plaintiffs and their amici curiae also point out that the mere fact of detention may cause detainees to lose wage income and potentially their jobs during their incarceration, and thus their ability to support themselves and their families. They assert that detainees (or their families) in many jurisdictions must also pay to maintain contact through phone calls, video calls, and visits — and to obtain what amici curiae have described as necessary items from the commissary. (See *In re Humphrey* (2018) 19 Cal.App.5th 1006, 1032, fn. 13.) The provision of a minimum wage for detainee labor could ameliorate some of these burdens. Yet the wage rate for county jail inmates laboring in the jail remains capped at a level set nearly 50 years ago.

Plaintiffs recognize that they receive certain nonmonetary benefits by working at the jail. According to the First Amended Complaint, "working in the kitchen means that plaintiffs can get out of their cells for some portion of the day, which is beneficial to their physical and mental health, and obtain additional food for their own enjoyment and nutrition." Detainees also receive worktime credits for their labor (see Pen. Code, § 4019, subd. (b)), but these credits end up providing no benefit to those detainees who are not ultimately convicted of an offense and punished with a term of incarceration.

Defendants and their amici curiae acknowledge these concerns, although they also elaborate on other benefits nonconvicted incarcerated people may receive. They explain that participation in voluntary work programs offers an opportunity to acquire job skills and training; facilitates post-

incarceration employment and reduction of recidivism; and, in addition to defraying the costs of room and board, creates an incentive for good behavior, which affects the level of jail security. Mandating a minimum wage, they argue, would increase the costs of these programs, potentially reducing work opportunities or diverting resources from other inmate programs.

We acknowledge the policy concerns raised by the parties, their amici curiae, and others.[6] Whether the result here, based on an interpretation of the current statutory scheme, "is a desirable policy is a matter beyond our purview, but it is not beyond the Legislature's. The Legislature can, if it sees fit, adjust" its approach to the payment of wages or wage credits for those awaiting adjudication of their cases as well as for convicted persons. (*Kaanaana, supra*, 11 Cal.5th at p. 182 (conc. opn. of Kruger, J.).)

Under the law as it currently stands, however, we conclude that nonconvicted incarcerated individuals performing services in county jails for a for-profit company to supply meals within the county jails and related custody facilities do not have a claim for minimum wages and overtime under Section 1194 of the California Labor Code, even in the absence of a local

---

[6] The California Reparations Task Force (Gov. Code, former § 8301 et seq.) has recommended that "the Legislature provide payment of the fair market value of the labor provided by incarcerated persons, whether they are in jail or prison." (Cal. Task Force to Study and Develop Reparation Proposals for African Americans, Final Report (2023) p. 645.)

ordinance prescribing or prohibiting the payment of wages for these individuals.[7]

                                               **EVANS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

---

[7]    This is sufficient to answer the question posed by the Ninth Circuit. We express no views as to whether a different rule would apply to nonconvicted incarcerated individuals working for a for-profit company *outside* the county jail.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Ruelas v. County of Alameda

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**  XX on request by 9th Circuit (Cal. Rules of Court, rule 8.548)
**Review Granted (published)**
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S277120
**Date Filed:**  April 22, 2024

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Covington & Burling, Cortlin H. Lannin, Isaac D. Chaput, Adam Z. Margulies, Eric C. Bosset and Kevin F. King for Defendant and Appellant Aramark Correctional Services, LLC.

Hanson Bridgett, Paul B. Mello, Adam W. Hofmann, Samantha D. Wolff, Gilbert J. Tsai, Winston K. Hu and Gary A. Watt for Defendants and Appellants County of Alameda and Sheriff Gregory J. Ahern.

Jennifer Bacon Henning for California State Association of Counties and California State Sheriffs' Association as Amici Curiae on behalf of Defendants and Appellants.

Siegel, Yee, Brunner & Mehta, Dan Siegel, Anne Butterfield Weills, EmilyRose Johns and Sara Beladi for Plaintiffs and Respondents.

Kyle Virgien; Summer Lacey; and Shilpi Agarwal for American Civil Liberties Union Foundation, American Civil Liberties Union

Foundation of Southern California, American Civil Liberties Union Foundation of Northern California, Fines and Fees Justice Center, Prison Law Office, Prison Policy Initiative, Roderick & Solange MacArthur Justice Center and Worth Rises as Amici Curiae on behalf of Plaintiffs and Respondents.

Bradan Litzinger, Molly Lao and Sabina Crocette for Legal Aid at Work, California Employment Lawyers Association, Communities United for Restorative Youth Justice, Impact Fund, National Employment Law Project and Root & Rebound as Amici Curiae on behalf of Plaintiffs and Respondents.

Kellie Walters for Legal Services for Prisoners with Children as Amicus Curiae on behalf of Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Dan Siegel
Siegel, Yee, Brunner & Mehta
475 14th Street, Suite 500
Oakland, CA 94612
(510) 839-1200

Gary A. Watt
Hanson Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105
(415) 777-3200

Kevin F. King
Covington & Burling LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-5488